**UNITED STATES of America, Appellee,**

v.

**Leonard R. FULLER,
Defendant, Appellant.**

**No. 89–1880.**

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1990.
Decided March 12, 1990.

James Michael Merberg, Boston, Mass., for defendant, appellant.

Deborah C. Sharp, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on brief for U.S.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Leonard Fuller appeals from a judgment of the United States District Court for the District of New Hampshire sentencing him to 63 months imprisonment for the crime, to which he pleaded guilty, of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. The issue on appeal is whether the district court erred in finding that Fuller was a leader, organizer, manager, or supervisor in the commission of drug distribution crimes, so as to subject his sentencing level to an upward adjustment by two levels. Because we conclude that the district court's finding was clearly erroneous, we vacate the sentence and remand for resentencing.

## BACKGROUND

The government's case against Fuller was based primarily on information provided by a confidential informant, William Morley. Morley met Fuller through a mutual friend, Andy Lebel, sometime in the fall of 1987. From the fall of 1987 to the spring of 1989, Morley made several purchases of marijuana from Fuller. Morley has advised the government that in the fall of 1987, he received 15 pounds of marijuana and Lebel received 5 pounds from Fuller. Morley reported that on another occasion, he delivered Fuller's marijuana in a truck to Fuller's house in Freedom, New Hampshire. Morley further reported that the next day, he helped Fuller unload the marijuana, from which he purchased 289 pounds, and that he observed an individual appear in a car with Colorado license plates and receive approximately 500 pounds of marijuana.

Sometime in 1989, Morley began operating as a confidential informant for the Drug Enforcement Administration ("DEA") and in this capacity, he went to Fuller and offered to purchase marijuana. On April 13, 1989, Fuller provided Morley with approximately 75 pounds of marijuana. Morley turned this over to the DEA and reported that he had observed an additional 100 pounds of marijuana at Fuller's residence in Medfield, Massachusetts. Fuller was arrested by federal authorities on April 16, 1989.

On April 14, 1989, Massachusetts police officers searched Fuller's residence in Medfield and found approximately 35 pounds of marijuana contained in several containers, 27 tubes of silicon, 3 thermos coolers, a caulking gun, and a scale. After Fuller's arrest on April 16, Massachusetts officials found approximately 94 pounds of marijuana in Fuller's car, which was registered in the name of Fuller's girlfriend.

On May 3, 1989, Fuller was indicted in the United States District Court for the District of New Hampshire on charges of engaging in a criminal enterprise, conspiracy to distribute over 100 kilograms of marijuana, and possession with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 848, 846, and 841(a). The government also sought forfeiture of all proceeds from the illegal activity. On June 27, 1989, Fuller entered into a plea bargain with the government, under which he pled guilty to one count of conspiracy to distribute approximately 370 pounds (168 kilograms) of marijuana in violation of 21 U.S.C. § 846. Pursuant to the agreement, Fuller also agreed to pay the government $120,000 in satisfaction of any further criminal or civil forfeiture liability.

Following the guilty plea, a presentence investigation report was prepared by a United States probation officer. The probation officer concluded that Fuller had been a "leader, manager, or facilitator" of criminal activity. The officer therefore recommended an upward adjustment by

two levels of Fuller's sentencing offense level, pursuant to section 3B1.1(c) of the Federal Sentencing Guidelines, which provides for a two level increase if the defendant was an "organizer, leader, manager, or supervisor" of criminal activity. At the sentencing hearing, the government recommended, pursuant to the plea agreement, that the 2 level upward adjustment not be made. However, the district court rejected the government's recommendation and adopted that of the probation officer, making a two level upward adjustment. The court found that Fuller had supplied substantial quantities of marijuana to more than one person and that Morley had on one occasion assisted Fuller in unloading a shipment of marijuana from which Morley purchased a large quantity and that on another occasion Morley assisted Fuller in transporting and unloading a shipment of marijuana, a portion of which was to be purchased by Morley. The court ruled that these findings justified the conclusion that Fuller was an organizer or manager.

Fuller's base offense level was determined to be 26, which applies to offenses involving 100–399 kilograms of marijuana.[1] *See* Sentencing Guidelines § 2D1.1(a)(3) and Drug Quantity Table. His offense level was reduced two levels, pursuant to section 3E1.1(a), for accepting responsibility for his criminal conduct. The offense level was then increased by two levels for conduct as an "organizer, leader, manager, or supervisor," under section 3B1.1(c). Accordingly, the total offense level was 26. The sentencing range for level 26 is 63–78 months imprisonment. *See* Sentencing Guidelines Part 5A (Sentencing Table). The district court sentenced Fuller to the lower end of the range, 63 months in prison, followed by 48 months of supervised release.

## DISCUSSION

The relevant sections of the Guidelines provide:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by three levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any other criminal activity other than described in (a) or (b), increase by 2 levels.

Sentencing Guidelines § 3B1.1.

Fuller argues that the district court erred in holding that he was an "organizer, leader, manager, or supervisor" within the meaning of section 3B1.1(c). He argues that there was no evidence that he ever employed or recruited any persons to assist him with his unlawful activity and that he never organized or directed other persons in criminal activities. He claims that the evidence showed no more than that he had distributed marijuana on six occasions and that the distributions were, with one exception, to the same person—Morley. He also notes that there was no evidence of anyone referring to Fuller as a leader or boss and that the evidence showed that he was merely one of several sources of supply for Morley, who had been engaged in extensive drug trafficking before meeting Fuller.

The government argues that the court reasonably concluded that Fuller's possession of coolers containing large quantities of marijuana, some of it sealed, as well as other drug paraphernalia, justified an inference that he was distributing to several persons. The government also contends that the facts that Fuller profited from his dealings and stored and transported the marijuana in his own car further support the finding that he was an organizer or manager.

■ Since the district court's determination that Fuller was an "organizer, leader, manager, or supervisor" involves application of the Guidelines to a particular set of

the evidence showed that Fuller's offense involved trafficking of 278 kilograms. Whichever figure is used, the base offense level is 26.

facts, we will reverse this finding only if clearly erroneous, *see United States v. Diaz–Villafane*, 874 F.2d 43, 48 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), or if premised on misapprehension of the applicable law. *See* 18 U.S.C. § 3742(f)(1).

Although the Guidelines do not specifically define "organizer, leader, manager, or supervisor," the commentary to the Guidelines provide some basis for discerning when an upward adjustment for an aggravated role under section 3B1.1(c) is appropriate.[2] First, the comments clearly indicate that section 3B1.1 is intended to apply only to criminal activity engaged in by more than one participant. The introductory commentary to Chapter 3, Part B of the sentencing guidelines states that "[w]hen an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." The "Background" comment to section 3B1.1 states, "This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) *and* the degree to which the defendant was responsible for committing the offense." (emphasis added). Section 3B1.4 of the Guidelines provides, in any case other than those specified in Part 3B, "no adjustment is made for the role in the offence." The commentary to this section states, "Many offenses are committed by a single individual or by individuals of roughly equal culpability so that none of them will receive an adjustment under this Part." Courts have accordingly held that section 3B1.1 applies only to criminal activity engaged in by more than one participant. *See, e.g., United States v.*

*William M. Carroll*, 893 F.2d 1502 at 1511 (6th Cir.1990) ("We hold that enhancement pursuant to § 3B1.1 requires the participation of at least two culpable individuals so that leadership of some criminal enterprise or organization, however minimal, can be claimed."); *United States v. Mejia–Orosco*, 867 F.2d 216, 220 (5th Cir.) ("The introductory statement to this part of the guidelines clearly indicates that there must be more than one participant in the criminal activity for this section to apply."), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); *United States v. Herrera*, 878 F.2d 997, 1002 (7th Cir.1989) (the involvement of "two to five participants in the criminal activity" is needed for section 3B1.1(c) to apply).[3]

Thus, section 3B1.1 does not apply to a defendant who merely organizes or supervises criminal activity that is executed without the aid of others. Instead, the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms "organizer, leader, manager and supervisor," each of which suggests the presence of underlings or subordinates. The application notes to section 3B1.1, which state the factors to be considered in distinguishing "organizers and leaders" from "managers and supervisors," for purposes of applying sections 3B1.1(a) and (b), further indicate that some degree of control or organizational authority over others is required.

Factors the court should consider include the exercise of decision making authori-

**2.** The Guidelines specifically sanction the use of the commentary in interpreting Guideline provisions. *See* Sentencing Guidelines § 1B1.7 ("The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. . . .").

**3.** In a recent opinion, a panel of the Ninth Circuit held that section 3B1.1 may apply to a defendant who acts as a leader or organizer of

others who were tricked by the defendant into engaging in criminal activity, but who lacked any criminal intent. *United States v. Earl Thomas Anderson*, 895 F.2d 641 (9th Cir.1990). Judge Kozinski, dissenting, argued that section 3B1.1 applies only where the defendant exercised control over at least one other person who is criminally responsible for the commission of the offense. Both the majority and dissent, however, apparently agreed that the defendant must be in a position of control or authority over other persons assisting in the commission of the offense.

ty, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

Sentencing Guidelines § 3B1.1, Application Note 3. *See also United States v. Diaz–Villafane,* 874 F.2d 43, 44 (1st Cir.1989) (district court's finding that defendant was subject to an upward adjustment under section 3B1.1(c) was supported by "evidence that the defendant boasted of controlling the area and that he was protected with a bunch of individuals riding bikes, motorcycles and cars" and by evidence that witness described him as a "leader"); *Herrera,* 878 F.2d at 1002 (district court's finding that defendant was an "organizer" of offense carried on with his wife was supported by sufficient evidence in that "[defendant's] control over his wife was easily established").

■ In view of the forgoing principles, we conclude that there was insufficient evidence to justify a finding that Fuller was an organizer, leader, manager, or supervisor, and, therefore, the district court's finding was clearly erroneous. In concluding that Fuller was subject to an upward adjustment under section 3B1.1(c), the district court did not make any finding that Fuller exercised control or was otherwise responsible for organizing others in the commission of the offense. Moreover, the evidence would not support such a finding. The evidence indicated that Fuller did not rely on the assistance of others, but instead engaged in a number of private drug distributions, in which he essentially did all the work himself. As to Fuller's dealings with Morley, the probation officer who prepared the presentencing report testified that there was no evidence that Fuller exercised any authority over Morley. The only instances of Fuller receiving "assistance" from Morley occurred in the context of Morley acting as an independent buyer, and not as a participant whose activities were directed or organized by Fuller.

■ The district court nonetheless concluded that a two level upward adjustment was justified by Fuller's possession of large quantities of marijuana, as well as possession of sundry drug paraphernalia, and the fact that there was evidence that he had distributed to at least one other person besides Morley. We think that in the absence of any evidence that Fuller exercised control over these persons or was otherwise responsible for organizing them in the commission of the offense, the mere fact that Fuller had dealt with a large quantity of marijuana does not support a finding that he was an organizer, leader, supervisor, or manager. *See Herrera,* 878 F.2d at 1001 ("Even if we accept the government's contention that the large quantity of cocaine implies the involvement of others, that does not tell us what role [the defendant] played with respect to his wife, or even with respect to those others.").[4]

Moreover, we think that to apply an upward adjustment in these circumstances might present the risk of subjecting the defendant to double counting in sentencing. The district court's decision to make an

---

4. In *Herrera,* the court indicated that the quantity of illegal substance involved may be relevant to the defendant's role in a criminal offense. *Id.* at 1001 n. 3. However, the court rejected the proposition that the quantity involved was probative in determining whether the defendant exercised control over others so as to justify an upward adjustment pursuant to section 3B1.1. *See id.* at 1001. *But cf. United States v. Barrett,* 890 F.2d 855, 867–68 (6th Cir.1989) (findings that the defendant was a source of cocaine for several other persons; that he dealt with large quantities; that substantial income was involved; that he sold cocaine on credit; and that the illegal activity took place over several years, justified an upward adjustment pursuant to section 3B1.1); *United States v. Barreto,* 871 F.2d 511, 512–13 (5th Cir.1989) ("A 'middleman' who simply coordinates the purchase of drugs from sources and sells to others may be an organizer, even if his operation can be characterized as minimally structured.") (citation omitted).

1222

upward adjustment of two levels rested primarily on the fact that Fuller was engaged in distributing large quantities of marijuana. However, the quantity of marijuana involved had already been taken into consideration in determining the base offense level.[5] Although the probation officer concluded that the evidence supported a finding that Fuller had distributed more marijuana than the amount specified in his guilty plea, this higher amount was not sufficient to give Fuller's offense a higher base offense level. *See supra* note 1. Thus, to increase the offense level because of the quantity of marijuana that Fuller dealt with would have the effect of accounting for this factor twice. *Cf. United States v. Guerrero,* 863 F.2d 245, 251 (2d Cir.1988) ("If the judge had selected a guideline range ... based on the [quantity of drugs involved], we would doubt that this same quantity could be used to justify a departure above that range.").

For the forgoing reasons, the district court's judgment sentencing Fuller is vacated and the case remanded for resentencing.

VACATED and REMANDED.

---

5. Fuller's base offense level was level 26, which applies to offenses involving 100 to 399 kilograms of marijuana. *See* Sentencing Guidelines § 2D1.1(a)(3), Drug Quantity Table.