**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roger SKINNER, Defendant–Appellant.**

**No. 92–1121.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 18, 1992.

Decided Feb. 17, 1993.

As Amended April 19, 1993.

K. Tate Chambers, Asst. U.S. Atty., Peoria, IL (argued), for plaintiff-appellee.

David W. Gleicher, Chicago, IL (argued), for defendant-appellant.

Before BAUER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Defendant Roger Skinner was charged in a three-count indictment with conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 (1988), use of a telephone to facilitate a drug felony in violation of 21 U.S.C. § 843(b) (1988), and attempt to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. On the morning that his trial was to begin, Mr. Skinner entered into a plea agreement in which he pleaded guilty to the attempt charge in exchange for dismissal of the remaining two counts.

The defendant appeals from the district court's application of the Sentencing Guidelines in arriving at his sentence. Specifically, the defendant alleges that the sentencing court clearly erred in (1) calculating the drug amount under U.S.S.G. § 2D1.4; (2) ruling that the defendant played an aggravating role under U.S.S.G. § 3B1.1; and (3) finding that he was not entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

## I

## BACKGROUND

In June of 1990, a DEA task force began a drug investigation in the Quad Cities area of Illinois that targeted the defendant Mr. Skinner. A confidential informant introduced Special Agent Brett Final to Mr. Skinner. Agent Final negotiated with Mr. Skinner to purchase cocaine. As the negotiations progressed, Agent Final and Mr. Skinner agreed that Final, the undercover agent, would provide the defendant with 100 pounds of marijuana that Mr. Skinner would broker to different persons over several days. They also agreed that Mr. Skinner would obtain ten ounces of cocaine for Agent Final after the marijuana transaction was completed. During the course of the negotiations, Mr. Skinner revealed that he had a buyer for fifty of the 100 pounds of marijuana. Mr. Skinner also stated that he could sell the remaining fifty pounds within two days.

On July 24, 1990, Agent Final brought the marijuana to a motel room in Moline,

Illinois, and met with Mr. Skinner. After Agent Final refused to provide Mr. Skinner with a sample of the marijuana, the defendant came forward with a different buyer for twenty pounds. This buyer was David Mangels, who was eventually indicted with Mr. Skinner. Shortly after Mr. Mangels appeared at the motel room, both Mr. Skinner and Mr. Mangels were arrested.

The defendant's sentencing hearing was held on January 3, 1992. Using the total 100 pounds of marijuana and ten ounces of cocaine that the government alleged was the amount involved in the transaction, the district court determined that Mr. Skinner's base offense level was 26. The court rejected the defendant's claim that it was only appropriate to consider the twenty pounds of marijuana that was to be sold to Mr. Mangels in calculating his base offense level. Over the defendant's objection, the court imposed a two-level increase in the offense level pursuant to U.S.S.G. § 3B1.1 because of Mr. Skinner's aggravated role in the offense. The court also rejected the defendant's claim that he was entitled to a two-level adjustment downward for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The final adjusted offense level was 28, which was cross-referenced to a criminal history category of III, yielding a sentencing range of 97 to 121 months. The district court sentenced Mr. Skinner to 98 months' imprisonment to be followed by five years of supervised release.

## II

## DISCUSSION

### A. *Calculation of the Drug Amount*

On appeal, Mr. Skinner alleges that he was merely "puffing" when he told Agent Final that he could arrange the purchase of 100 pounds of marijuana and the sale of ten ounces of cocaine. Mr. Skinner maintains that the proper amount of drugs involved in the offense should be reduced to twenty pounds of marijuana and no cocaine. Relying on *United States v. Ruiz*, 932 F.2d 1174 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991), and *United States v. Richardson,*

939 F.2d 135 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992), Mr. Skinner maintains that he was incapable of producing either the money for purchase of the marijuana or the ten ounces of cocaine he had agreed to sell to Agent Final.

▮▮▮ The sentencing court determines the quantity of drugs involved in an offense by a preponderance of the evidence. *United States v. Hughes,* 970 F.2d 227, 237 (7th Cir.1992). We review the sentencing court's findings for clear error. *United States v. Cea,* 963 F.2d 1027, 1030 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992). "[T]he sentencing court should consider negotiated amounts of drugs absent a determination that the defendant did not intend to or could not produce those amounts." *United States v. Buggs,* 904 F.2d 1070, 1079 (7th Cir.1990).

▮▮▮ The defendant's claim that the record indicates that he was merely bragging when he discussed drug amounts and was incapable of following through on his deal is contradicted by the record. On this issue, Agent Final testified at the sentencing hearing, and the government played tapes of the recorded negotiations between Agent Final and Mr. Skinner. Agent Final testified that he was introduced to Mr. Skinner by a confidential informant who had sold cocaine for Mr. Skinner in the past. As in the present case, Mr. Skinner had acted as a "middleman" who arranged the purchase of drugs for other persons from whom he extracted a profit.

Agent Final initially attempted to purchase cocaine from Mr. Skinner. When they could not come to terms on the cocaine deal, and after Mr. Skinner complained about the relative scarcity of marijuana in Rock Island, Agent Final decided to offer to sell marijuana to Mr. Skinner. After a series of negotiations, Mr. Skinner agreed to purchase the 100 pounds of marijuana. The understanding between Mr. Skinner and Agent Final was that the agent would sell the marijuana to Mr. Skinner for $900 a pound. Mr. Skinner in turn would sell the product to his customers for

$1,000 a pound. Mr. Skinner informed Agent Final that fifty pounds would be sold to the person who would supply the cocaine and that two lots of twenty pounds would be sold to other persons. Mr. Skinner intended to use his $9,000 profit, essentially his brokerage fee, to purchase the remaining ten pounds. Mr. Skinner informed Agent Final that he then would supply the ten ounces of cocaine for $10,-000.

After the government agent refused to allow Mr. Skinner to take a sample of the marijuana, complications developed and Mr. Skinner placed several telephone calls to work out the problems. Agent Final overheard Mr. Skinner talking on the telephone to someone and informing that person that Agent Final wanted "ten osbournes" after the marijuana deal was complete. Agent Final testified that "ten osbournes" was a code phrase for ten ounces of cocaine. After he hung up the telephone, Mr. Skinner informed Agent Final that he had been speaking to the cocaine supplier. During further negotiations, Mr. Skinner identified the person who wanted to buy the fifty pounds of marijuana as the cocaine supplier. Mr. Skinner also stated his belief that he could arrange the sale of 100 pounds of marijuana every two weeks. Finally, Mr. Skinner produced Mr. Mangels, a purchaser seeking only twenty pounds rather than the buyer who planned to purchase fifty pounds of marijuana and provide the ten ounces of cocaine.

To support his argument that he did not intend or have the ability to purchase the marijuana or produce the cocaine, Mr. Skinner claims that the details of the sale were never worked out and that his statements to Agent Final concerning the transactions were empty promises designed to impress and that he could never fulfill. Mr. Skinner characterizes his statements as mere puffery or braggadocio, which this court found to be an insufficient basis for establishing the quantity of drugs in *United States v. Ruiz*, 932 F.2d 1174 (7th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). *Ruiz*, however, is readily distinguishable from Mr. Skinner's case. In *Ruiz*, a government informant who participated in a cocaine purchase became upset after receiving only one of two kilograms of cocaine that the defendant had promised to deliver to him. In an attempt to appease an unhappy customer, the defendant Ruiz told the informant, "I'll get you the other kilo. And if you want, even ten more I can get." *Id.* at 1184. We found that the district court erred in using the ten kilogram amount when calculating the amount of drugs involved in the conspiracy. We noted in *Ruiz:*

> Ruiz's single comment was not sufficient to establish that the conspiracy had as its goal the consummation of a deal for upwards of ten kilograms. Such an amount never had been mentioned to Agent Guerra; there was no evidence of other buyers for such an amount; no price had been set or even quoted for such an amount; indeed, there was no evidence of any kind that Ruiz had in his possession or had access to that amount of cocaine.

*Id.*

In the present case, Mr. Skinner and Agent Final negotiated the amount and price of cocaine and marijuana that would be involved in the separate transactions; Mr. Skinner dictated the timing of the transactions; there were extensive negotiations leading up to the delivery of 100 pounds of marijuana to the motel room; Mr. Skinner produced a buyer for a portion of the marijuana and stated that he would produce the remaining buyers within two days; Mr. Skinner contacted likely buyers within earshot of Agent Final; and Agent Final overheard Mr. Skinner arrange for the delivery of the ten ounces of cocaine after the marijuana transaction was completed.

The evidence of negotiations, resolution of the terms of the two deals, and the production of the first buyer evidenced Mr. Skinner's intent and ability to facilitate the purchase and sale of 100 pounds of marijuana and ten ounces of cocaine. The district court based its determination of the drug quantity on the agreed upon terms of the deal between Mr. Skinner and Agent Final, and not upon offhand comments con-

cerning larger quantities as was the case in *Ruiz.*

Mr. Skinner's "lack of ability" argument founded on *United States v. Richardson,* 939 F.2d 135 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992), is also unpersuasive. Mr. Skinner maintains that, because he lacked funds to buy the marijuana and the ability to obtain the cocaine, he should not be held responsible for the amounts that he negotiated. In *Richardson,* the defendant agreed to sell ten kilograms of cocaine to an undercover officer. In challenging his sentence, the defendant later argued that he was incapable of producing the negotiated amount because at the time of negotiations it was impossible for him to raise the money to buy the cocaine for resale to the agent. The Fourth Circuit agreed, and held that the defendant should not have been sentenced for all ten kilograms because, "[t]here is nothing in the record to show how Richardson could have raised $150,000 or any substantial amount of money, and without the money he was not 'reasonably capable' of producing any cocaine." *Id.* at 143.

In *United States v. Mahoney,* 972 F.2d 139, 142–43 (7th Cir.1992), we distinguished *Richardson* from cases where the defendant acts as a middleman who does not have to put up any money to further the drug transaction. We noted:

> In the case at bar, however, Agent Schaefer had promised to finance the entire deal—Mahoney didn't have to put up a dime. Moreover, Mahoney did not, like the defendant in *Richardson,* have to buy the drugs from someone before he could sell them to Schaefer; he simply had to perform his role in facilitating the deal. Mahoney was merely the middleman or conduit, putting a buyer in touch with his supplier, and therefore his poverty or lack of it was irrelevant to the execution of the planned sale.

*Id.* at 142. As was the case in *Mahoney,* Mr. Skinner was a middleman who arranged to have buyers purchase marijuana from Agent Final. Mr. Skinner was to profit from each sale, and it was only after he received the benefits of the marijuana transaction that he was to consummate the cocaine transaction. Mr. Skinner had earnestly negotiated the terms of the marijuana sale and had arranged for the procurement of the ten ounces of cocaine after the marijuana deal was completed. The district court did not clearly err in finding that the drug weight involved in the offense included the 100 pounds of marijuana and the ten ounces of cocaine.

**B. *Role in the Offense Determination***

■ The defendant, who pleaded guilty to a conspiracy charge, challenged the district court's two-point enhancement to his base offense level for his role in this offense. The district court concluded that Mr. Skinner was an "organizer" under U.S.S.G. § 3B1.1(c). Because the finding of an aggravated role involves a "mixed" question of fact and law, the defendant has the burden of demonstrating that it is clearly erroneous. 18 U.S.C. § 3742(e) (1988). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ Section 3B1.1(c) provides for a two-level enhancement if the defendant acts as an organizer, leader, manager, or supervisor. The district court found that Mr. Skinner was an "organizer" because he coordinated the purchase of 100 pounds of marijuana, arranged for its sale to different persons, and structured a ten-ounce cocaine transaction. The court determined that Mr. Skinner orchestrated the timing of the two transactions, and found that he played a greater role in planning and organizing the offense than Mr. Mangels or the other proposed buyers. Furthermore, the court found that, although there was no specific evidence that Mr. Skinner would ultimately receive a larger degree of profit than the other persons who were involved, there was evidence that he received a substantial profit from the ninety pounds that were to be sold due to his role as middleman. Mr. Skinner was the one person in the transaction who could structure the

deal so that undercover Agent Final could sell his 100 pounds of marijuana within two days and obtain the ten ounces of cocaine after the marijuana deal was concluded. The defendant challenged this finding at the sentencing hearing and now repeats that challenge on appeal. He relies on several of our cases that, in his view, preclude a section 3B1.1(c) enhancement if the defendant does not exercise "control" over other participants in the offense. *See United States v. Brown,* 944 F.2d 1377, 1381–82 (7th Cir.1991) (citing cases).

Section 3B1.1 of the United States Sentencing Guidelines provides:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager or supervisor in any other criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. The Guidelines do not define the words "organizer," "leader," "manager," or "supervisor." The Guidelines commentary, however, sets forth seven factors for distinguishing between an organizational and leadership role (making subsection (a) applicable) from a role of "mere management or supervision" (making subsection (b) applicable). These factors are: (1) the exercise of decision-making authority; (2) the nature of the participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. *See* U.S.S.G. § 3B1.1, comment. (n.3).

As application note 3 to section 3B1.1 clearly states, the seven factors are to be used "[i]n *distinguishing* a leadership and organizational role from one of mere management or supervision" (emphasis added). Nonetheless, this circuit like other circuits [1] has relied upon the seven factors, particularly the exercise of control and authority over others, in determining whether section 3B1.1(c) applies. *See Brown,* 944 F.2d at 1381–82 (reversed enhancement based on middleman status alone without evidence of control); *United States v. Ramos,* 932 F.2d 611, 618 (7th Cir.1991) (defendant controlled other members of the drug ring); *United States v. Franco,* 909 F.2d 1042,

---

**1.** *See United States v. Singer,* 970 F.2d 1414, 1419 (5th Cir.1992) (citing application note 3, court approved two-point enhancement for "organizer" status); *United States v. Schwarck,* 961 F.2d 121, 123 (8th Cir.1992) (relying on "decision-making authority" factor, court affirmed two-point enhancement for role as manager or supervisor); *United States v. Lincoln,* 956 F.2d 1465, 1474 (8th Cir.) (reciting application note 3 factors, court affirmed enhancement based on evidence that the defendant initiated and orchestrated perjury scheme), *cert. denied,* ─── U.S. ───, 113 S.Ct. 259, 121 L.Ed.2d 190 (1992); *United States v. Monroe,* 943 F.2d 1007, 1019–20 (9th Cir.1991) (citing commentary factors, enhancement under section 3B1.1 proper where defendant exercised decision-making authority and had an "organizational role"); *United States v. Morgan,* 936 F.2d 1561, 1574 (10th Cir.1991) (based on evidence of control over a subordinate, court affirmed two-point enhancement), *cert. denied,* ─── U.S. ───, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *United States v. Gonzales,* 929 F.2d 213, 216 (6th Cir.1991) (citing application note 3 factors, court affirmed enhancement

for "organizer" status); *United States v. Smith,* 914 F.2d 565, 569 (4th Cir.1990) (same). *But see United States v. Bost,* 968 F.2d 729, 734 (8th Cir.1992) (court relied on none of the commentary factors, instead observing that the defendant was the leader of the conspiracy and the most culpable of those that were indicted); *United States v. Tsai,* 954 F.2d 155, 166 (3d Cir.) (court relied on none of the commentary factors, relying instead on an assessment of the defendant's relative culpability for the offense), *cert. denied,* ─── U.S. ───, 113 S.Ct. 93, 121 L.Ed.2d 54 (1992); *United States v. Pettit,* 903 F.2d 1336, 1341 (10th Cir.) (remanding on other grounds, but finding no problem with enhancement based on evidence only showing that the defendant allowed others to live in a house that they used to conduct crack sales), *cert. denied,* 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990); *United States v. Carrillo,* 888 F.2d 117, 118 (11th Cir.1989) (upheld enhancement based upon evidence that defendant managed stash house, received cocaine, and distributed various amounts of the drug to others).

1046 (7th Cir.1990) (defendant directed others in drug distribution); *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir.1990) (co-conspirator's unwillingness to act without defendant's consent implied that defendant exercised control in conspiracy). In *Ramos*, however, we recognized explicitly that the factors listed in the commentary were only intended to apply directly to subsections (a) and (b) but also suggested that this catalogue of traits could also be useful in determining the applicability of subsection (c):

> The location of these factors in the Guidelines commentary in some ways suggests that the primary purpose of this list is to assist in distinguishing organizers and leaders from managers and supervisors. The factors appear to be just as relevant and useful, however, in distinguishing between those defendants who should be classified within section 3B1.1(c) and those who should not.

*Ramos*, 932 F.2d at 618 n. 14.

In *Brown*, we noted that "[t]he central concern of § 3B1.1 is relative responsibility. Under the Guidelines, those who play an aggravating role in the offense are to receive sentences that reflect their greater contributions to the illegal scheme." *Brown*, 944 F.2d at 1381; *see also United States v. Tetzlaff*, 896 F.2d 1071, 1074, 1075 n. 4 (7th Cir.1990) (The district court must focus on the defendant's role in the offense when applying section 3B1.1(c). The reviewing court must give the district court's findings on this issue due deference because "[t]he district court is in the best position to assess the defendant's relative culpability vis-a-vis other participants in the offense."). In determining that the district court had enhanced improperly the defendant's sentence in *Brown* under section 3B1.1(c), we found determinative the fact that the only evidence supporting the enhancement was that Brown had acted as a middleman distributor in a drug ring and that he sold to customers who bought the drugs primarily for personal use. *Brown*, 944 F.2d at 1380–81. Considering that there were two tiers of distributors working above defendant Brown, our disagreement in that case with the district court's finding that Brown had a greater degree of relative responsibility than his co-defendants is not so anomalous.

The holding in *Brown* focused on one of the application note 3 factors—control and authority. Our focus on this one factor, however, was not meant to obscure that the "central concern" of section 3B1.1, is relative responsibility for the offense.[2] While we referred to the element of control as "*an* important and recurring factor," *id.* at 1381 (emphasis added), we hardly established it as the *sine qua non* of liability for enhancement under section 3B1.1(c).[3]

Focusing on the relative responsibility for the offense and not exclusively on one of the application note factors is consistent with the remainder of our caselaw and of the caselaw of the other circuits. For instance, in *United States v. Lewis*, 954 F.2d 1386 (7th Cir.1992), we rejected a defendant's claim that he was a co-equal partner

---

**2.** In *United States v. McGuire*, 957 F.2d 310 (7th Cir.1992), we reaffirmed our holding in *Brown*, 944 F.2d at 1380–82, that a defendant "manages" a participant in criminal activity if he exercises some control over the participant. *McGuire*, 957 F.2d at 316. The issue in *McGuire*, however, was whether a three-point enhancement under section 3B1.1(b) could be imposed where there were more than five participants in the offense, but the defendant *managed* only three. We reiterated the control requirement for management status and found that the district court correctly applied the three-point enhancement. In all events, *McGuire* involved subsection (b), not subsection (c), of section 3B1.1, and McGuire was characterized as a "manager" not an "organizer," as the district court described Mr. Skinner.

**3.** Nor did we state that, under no conditions, could a "middleman" be eligible for the enhancement. Instead we wrote:

> The government might have been on more solid footing in seeking the adjustment had it presented evidence that William played a supervisory role in the marijuana shipments that were unloaded at his home. It did not present that evidence, however, nor did it offer evidence that William claimed the right to a larger cut of the profits, exercised any control over the customers to whom he sold drugs, or recruited dealers to work for him.

*United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir.1991).

with a prison guard who had participated in the defendant's conspiracy to distribute cocaine and heroin in prison. The defendant's activities that we found sufficient to render him relatively more responsible for the offense were the acts of persuading the prison guard to smuggle contraband into the prison to prove his friendship, arranging for the defendant's girlfriend to bring drugs to the prison, and persuading the prison guard to pick up the drugs from the defendant's girlfriend. *Id.* at 1396. We observed that the defendant provided no support for the "naked allegation" that the prison guard played an equal role in the offense. The district court found the defendant's powers of persuasion over his co-defendant sufficient to justify the section 3B1.1(c) enhancement, and this court agreed. Nowhere in the district court's findings or in our opinion was there a claim that the defendant "controlled" the prison guard. Rather, this court found that the defendant "managed the conspiracy." *Id.* Similarly, while Mr. Skinner did not control Mr. Mangels, he did orchestrate the conspiracy to purchase marijuana from and sell cocaine to Agent Final.

In *United States v. Cochran*, 955 F.2d 1116 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992), we also affirmed a district court's imposition of a section 3B1.1(c) enhancement for two of the five defendants. Defendant Cochran had agreed to "organize" the sale of cocaine to undercover agents and "make appropriate arrangements with his drug suppliers." When affirming the district court's decision to add a two-point enhancement of Cochran's base offense level for his role in the offense, we did not discuss the factor of "control over others" emphasized in *Brown*. Rather, we noted that,

> [t]he district court concluded that Cochran acted as an organizer because he played a central role in coordinating the five individuals who worked together to supply the cocaine. The evidence showed that Cochran was the key figure linking supplier Howell with the undercover purchasers. He was at each of the meetings where the drug deals were planned; his home was the contact loca-

tion; and he was present at each transaction. The record amply supports a two-level enhancement for Cochran's leadership role in the conspiracy.

*Id.* at 1124–25; *see also United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990) (Sentencing Commission intended section 3B1.1 to apply only to situations where the offender organizes or leads criminally responsible individuals).

Other circuits have approached this Guideline section in the same fashion. The Fifth Circuit in *United States v. Barreto*, 871 F.2d 511 (5th Cir.1989), affirmed the sentencing court's determination that a middleman deserved a section 3B1.1(c) enhancement on facts certainly no more suggestive of organizational skills than the present case. The defendant in *Barreto* was a bar owner who procured cocaine for undercover agents who posed as patrons seeking cocaine. Barreto merely placed a phone call to his supplier, the supplier would place the drugs in Barreto's automobile, and Barreto would deliver the contraband to the officers. The Fifth Circuit found the following evidence sufficient to support the two-point enhancement:

> Barreto acted independently, determining whether to sell to the undercover officers, as well as deciding the quantity, source, and price of the contraband. He orchestrated the time, place, and manner of delivery of the cocaine to him and its subsequent distribution to his customers. He was able to obtain up to one-half pound of cocaine without advance payment and he had more than one source.

*Id.* at 512. In *United States v. Avila*, 905 F.2d 295 (9th Cir.1990), the Ninth Circuit affirmed the district court's section 3B1.1(c) enhancement for the defendant's status as an "organizer or leader" without a finding that the defendant controlled others. Rather, the district court relied on statements in the defendant's presentence report that the defendant was a substantial drug dealer, that the defendant negotiated the price of the drugs, that the defendant had alternative drug suppliers, and that the size of the drug transaction was substantial. *Id.* at 298–99. The appellate court

agreed with the district court's characterization of the defendant as an "organizer or leader" and the sentencing court's reliance on the above factors, and stated that it was "clear that Avila *coordinated* the procurement and the distribution of both cocaine and heroin." *Id.* (emphasis supplied).

In sum, the proper focus of the district court when considering whether to apply the section 3B1.1(c) two-point enhancement is on the defendant's role in the offense. "Control over others" is undoubtedly a compelling factor in finding a defendant more responsible than his co-defendants for the commission of a particular offense. However, inordinate emphasis ought not be placed on this single factor among the seven factors listed in application note 3. Such emphasis on a discrete portion of an application note (which only directly applies to subsections (a) and (b)) diverts attention from section 3B1.1(c)'s unambiguous mandate that the two-point enhancement may only be imposed where the defendant is more responsible than his co-defendants for the commission of the offense. Being the "organizer" of the offense or playing an analogous aggravating role should be equally compelling factors for application of section 3B1.1(c) as exercising control over others.

As the district court noted, Mr. Skinner was the key figure in the drug distribution scheme. Mr. Skinner coordinated the procurement and distribution of cocaine and marijuana and, as organizer of the offense, was the most culpable person in the conspiracy. The district court found that Mr. Skinner was to orchestrate several transactions that would result in the sale of 100 pounds of marijuana and ten ounces of cocaine. In addition, the sentencing court specifically found that the co-conspirator Mangels, who appeared at Agent Final's motel room at Mr. Skinner's direction, had a subordinate role in the conspiracy as the buyer of twenty-two pounds of marijuana. Mr. Skinner was indisputably more responsible for the offense than his co-defendant Mangels. Mr. Skinner recruited distributor-buyers (persons making fifty-pound and twenty-pound buys) who were not, in all

probability, buying for personal use; he controlled the sales; and he intended to skim profits off of every sale. While Mr. Skinner did not "control" Mr. Mangels in the way a manager of a criminal enterprise would, his central role in organizing the offense justified imposition of the section 3B1.1(c) enhancement. While Mr. Skinner might not have directly "controlled" Mr. Mangels and the cocaine dealer/future buyer of fifty pounds of the marijuana to whom he spoke on the telephone, he indisputably "organized" the conspiracy to distribute. Mr. Skinner also represented to Agent Final that he had numerous contacts in the drug trade, which would enable him to expedite distribution of the 100 pounds of marijuana involved in this transaction and ensure quick distribution in future drug deals. Agent Final also testified that he was introduced to Mr. Skinner by a confidential informant who had sold cocaine for the defendant in the past. Indeed, the record, as well as the district court's explicit findings, supports application of section 3B1.1(c)'s two-point enhancement based upon the following factors listed in application note 3: (1) Mr. Skinner exercised decision-making authority over the details of the transactions; (2) Mr. Skinner recruited at least one accomplice; (3) Mr. Skinner had the largest role in planning and organizing the offense; and (4) Mr. Skinner played the key role in commission of the offense. We cannot say that the district court was clearly erroneous in its imposition of the enhancement.

### C. *Acceptance of Responsibility*

Section 3E1.1 of the Guidelines permits a two-point reduction from a defendant's base offense level "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. The district court noted that commentary 3 to section 3E1.1 indicated that Mr. Skinner was not entitled to a section 3E1.1 reduction because he had not accepted full responsibility for his offense despite his guilty plea. Commentary 3 provides:

Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n.3). In denying the section 3E1.1 reduction, the sentencing court stated:

In terms of the first part of that, prior to the commencement of trial, I don't think the fact that he decided to plead guilty after the jury was selected is particularly significant. His admissions regarding responsibility here, however, have been extremely limited, and based on my understanding of the record in this case I believe that his truthful admissions of the involvement in the offense and related conduct had not been—has been far less than accurate and complete. I think that he has withheld acceptance of responsibility for a great deal of his involvement in this activity, and consequently it's the court's finding that he is not entitled to the reduction for acceptance of responsibility.

Sentencing Tr. at 74–75. Specifically, the defendant denied that he was responsible for attempting to distribute more than twenty pounds of marijuana; he denied that he was responsible for attempting to distribute ten ounces of cocaine; and he denied contacting more than one person to purchase the marijuana.

Mr. Skinner argues that he accepted complete responsibility by pleading guilty and by describing his illegal conduct to the probation department and to the district court in a letter to Judge Mihm. The defendant maintains that he has completely admitted his guilt and that *United States v. Trussel*, 961 F.2d 685 (7th Cir.1992), requires a finding that the district court clearly erred by refusing to give him a two-point reduction in his base offense level.

 The defendant bears the burden of demonstrating that he is entitled to the reduction in offense level. *United States v. Leiva*, 959 F.2d 637, 644 (7th Cir.1992) (citing *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir.1990)). We must give due deference to the district court's unique opportunity to evaluate fully a defendant's acceptance of responsibility. 18 U.S.C. § 3742(e); *United States v. Franklin*, 902 F.2d 501, 505 (7th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990) (quoting U.S.S.G. § 3E1.1, application note 5). We shall reverse a district court's decision concerning acceptance of responsibility only for clear error because " '[t]he question of whether a defendant has accepted responsibility for his crimes is a factual one, depending largely on credibility assessments of the sentencing judge.' " *United States v. Guadagno*, 970 F.2d 214, 224 (7th Cir.1992) (quoting *United States v. McGuire*, 957 F.2d 310, 317 (7th Cir.1992) (citations omitted)).

 Although Mr. Skinner pleaded guilty on the day of his trial, he was consistently less than candid with the district court concerning the extent of his role in the conspiracy and distribution scheme. Contrary to the unambiguous testimony of Agent Final at Mr. Skinner's sentencing hearing and the incriminating tape recordings of the drug negotiations, Mr. Skinner maintained that he was only responsible for the twenty pounds of marijuana that defendant Mangels was to buy. In his letter to the sentencing court, Mr. Skinner also minimized his role and claimed that he was merely the victim of a heroin-addicted informant and overzealous government agents. A reduction for acceptance of responsibility does not automatically apply merely because a defendant pleads guilty, *United States v. Escobar–Mejia*, 915 F.2d 1152, 1153 (7th Cir.1990); *Franklin*, 902 F.2d at 505–06, and it applies only when the defendant "fesses up to his actual offense." *Escobar–Mejia*, 915 F.2d at 1153 (noting that no reduction applied when defendant, who pleaded guilty, claimed he was the pawn of others and denied that he was responsible for distribution of more than five kilograms of cocaine although

evidence indicated he had distributed at least seven kilograms).

The defendant's reliance on *United States v. Trussel*, 961 F.2d 685 (7th Cir. 1992), is misplaced. In *Trussel* we affirmed the district court's decision to deny the defendant an acceptance of responsibility reduction because the defendant had attempted to withdraw his guilty plea and did not admit his full role in the conspiracy. *Id.* at 691. In the present case, the district court correctly found that the defendant refused to accept responsibility for his complete role in his offense. The district court did not clearly err in deciding not to grant the defendant a two-point reduction for acceptance of responsibility.

### Conclusion

The district court did not clearly err in calculating the drug amount under U.S.S.G. § 2D1.4 or in determining that the defendant was not entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The plain language of U.S.S.G. § 3B1.1 and its commentary also supports the district court's finding that the defendant was an organizer of the offense and therefore should have received a two-level enhancement of his base offense level.

The defendant's sentence is affirmed.

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I concur fully in the court's opinion and write separately merely to add several brief observations regarding the propriety of the enhancement pursuant to section 3B1.1(c) of the Sentencing Guidelines.

At first blush, it might seem counterintuitive to deem someone caught in a reverse sting operation an "organizer." In this case, after all, the government did not stumble fortuitously upon a narcotics transaction already in progress. Instead, once a confidential informant had introduced Special Agent Final to Skinner, the agent solicited Skinner's help in purchasing cocaine and selling a large quantity of marijuana. In at least some measure, there-

fore, the government itself was responsible for orchestrating the transaction. *Cf. United States v. Carroll*, 893 F.2d 1502, 1509 (6th Cir.1990) (defendant's efforts to organize his own escape from prison did not support section 3B1.1(c) enhancement, because "while Carroll may have suggested a prison escape, the government, unbeknownst to Carroll, had actually taken over and was actually organizing the operation").

Nonetheless, as the court's opinion makes clear, the evidence amply demonstrates that once Special Agent Final made his wishes known to Skinner, Skinner picked up the ball and assumed responsibility for locating someone to buy the marijuana from Final and to supply him with cocaine. Thus, Skinner did not simply execute a transaction that the government initiated, but negotiated the terms of the deal with Final and located the other individuals needed in order to make the transaction possible. Accordingly, the two-level enhancement under section 3B1.1(c) was an appropriate means of recognizing Skinner's degree of responsibility for the criminal activity.

Moreover, to the extent that Skinner's role in the offense might not fall neatly within the ordinary notion of an organizer, I find it significant that, in contrast to subsections (a) and (b) of 3B1.1, subsection (c) draws no distinction between an "organizer" or "leader" on the one hand and a "supervisor" or "manager" on the other— any one of these qualifies for the two-level enhancement. Thus the observation in the Commentary:

> In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3B1.1(c).

U.S.S.G. § 3B1.1, Background. *See United States v. Herrera*, 878 F.2d 997, 1000 n.

1 (7th Cir.1989); *see also United States v. Pierce*, 907 F.2d 56, 57 n. 3 (8th Cir.1990). Accordingly, even if Skinner's level of responsibility was insufficient to characterize him as an organizer or leader of the scheme, the evidence would still suffice to render him a supervisor or manager and thus to support the enhancement under section 3B1.1(c). *See, e.g., United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989) (per curiam) (section 3B1.1(c) enhancement upheld where evidence was sufficient to support finding that defendant was either an "organizer" or a "supervisor"); *United States v. Mejia–Orosco*, 867 F.2d 216, 222 (5th Cir.) (section 3B1.1(c) enhancement upheld where district court's finding that defendant was "an organizer, leader, manager or supervisor" was not clearly erroneous), *reh'g denied per curiam*, 868 F.2d 807 (5th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

Finally, I wish to point out that our holding is not inconsistent with the opinions of the First and Ninth Circuits in *United States v. Fuller*, 897 F.2d 1217 (1st Cir. 1990), and *United States v. Mares–Molina*, 913 F.2d 770 (9th Cir.1990). We cited both of these cases in *Brown* for the proposition that a defendant's status as a narcotics distributor, without more, does not render him or her an "organizer, leader, manager or supervisor" within the meaning of section 3B1.1(c). 944 F.2d at 1381. Like our own opinion in *Brown*, these two cases note the defendant's lack of control over others as a reason for reversing the imposition of a section 3B1.1(c) enhancement. *See Fuller*, 897 F.2d at 1220–21; *Mares–Molina*, 913 F.2d at 773–74. Yet, each opinion also reveals that control over others is not the *sine qua non* of this enhancement. Thus, in *Fuller*, the First Circuit stated that "the defendant must have exercised some degree of control over others involved in the commission of the offense *or* he must have been responsible for organizing others for the purpose of carrying out the crime." 897 F.2d at 1220 (emphasis supplied).[1] The Ninth Circuit applied the same rule in *Mares–Molina*, concluding that a section 3B1.1(c) enhancement was not appropriate where "[t]here [were] no facts to support the conclusion that Mares exercised control *or* was otherwise responsible for organizing, supervising, or managing others in the commission of the offense." 913 F.2d at 770 (emphasis supplied).

Nor is our holding inconsistent with the opinion of the Tenth Circuit in *United States v. Reid*, 911 F.2d 1456, 1464–65 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). We recently construed *Reid* to require proof that the defendant exercised either direct or indirect control over the other members of a criminal scheme before he or she will be deemed an organizer or leader. *See United States v. McGuire* (discussed *ante* at n.2), 957 F.2d 310, 317 n.4 (7th Cir.1992). Yet, *Reid* itself indicates that a defendant's efforts to marshal other individuals for the purpose of executing the crime will satisfy section 3B1.1. 911 F.2d at 1464. *See United States v. Litchfield*, 959 F.2d 1514, 1522 (10th Cir.1992) ("to find a defendant an organizer or leader under § 3B1.1 there must be elements of control *or organization of other people*") (emphasis supplied). *Cf. United States v. Rowley*, 975 F.2d 1357, 1364 (8th Cir.1992) (for a defendant to fall within definition of an organizer or leader, "we have always required evidence that the defendant directed *or procured the aid of underlings*") (emphasis supplied).

---

1. The dissent in *Mares–Molina* construed *Fuller* to require proof that the defendant controlled other participants in the crime in order for section 3B1.1(c) to apply. *See Mares–Molina*, 913 F.2d at 775–76 (dissenting op.). Yet, as set forth above, *Fuller* in fact held that either control over others or a role in coordinating their efforts would suffice. 897 F.2d at 1220. The dissent's somewhat misleading construction of *Fuller* no doubt springs from the fact that the particular question posed in *Mares–Molina* was whether a defendant who merely coordinated particular activities, without controlling or organizing other *people*, could be deemed a manager for purposes of section 3B1.1(c). The majority answered this question in the negative, *id.* at 773–74, while the dissent concluded that management of a thing, such as a business or money, would be sufficient to render someone a manager within the meaning of section 3B1.1(c), *id.* at 774–77.

Consequently, each of these cases leaves ample room for our holding here, *i.e.*, that a defendant's role in bringing together and coordinating the other participants in a criminal scheme may render him or her an organizer within the scope of section 3B1.1(c), even if the defendant did not necessarily control or command these other individuals. *See United States v. Paulino*, 935 F.2d 739, 758 (6th Cir.1991) (" 'A finding that a defendant is functioning as an organizer or leader ... does not necessarily mean that he is directly controlling other individuals.' ") (quoting *United States v. Johnson*, 906 F.2d 1285, 1291–92 (8th Cir. 1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 315, 323, 660, 883, 116 L.Ed.2d 257, 264, 751, 787 (1991–92). For these reasons, I agree that the district court's decision to impose the two-level enhancement pursuant to section 3B1.1(c) was not clearly erroneous.