NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-1710

———————————

UNITED STATES OF AMERICA

v.

CHRISTOPHER CASTELLUZZO,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 3-13-cr-00560-001
District Judge: The Honorable Freda L. Wolfson

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 14, 2018

Before: SMITH, *Chief Judge*, CHAGARES, and FUENTES, *Circuit Judges*

(Filed: July 3, 2018)
———————————

OPINION[*]
———————————

SMITH, *Chief Judge.*

A jury found Christopher Castelluzzo and co-defendant Luke Atwell guilty of

conspiring to distribute and to possess with the intent to distribute methylone, cocaine,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

MDMA, and marijuana in violation of 21 U.S.C. § 846. Castelluzzo appealed, contending the District Court erred in denying his motion to suppress and in applying an enhancement under § 3B1.1(a) of the U.S. Sentencing Guidelines (U.S.S.G.) for Castelluzzo's role in the offense as an organizer or leader.[1] For the reasons set forth below, we will affirm.

Castelluzzo challenges the District Court's denial of his motion to suppress the warrantless search of his cell phone. The arrest occurred at the U.S. Post Office in Manville, New Jersey. Atwell drove to the Post Office, accompanied by Castelluzzo, to pick up a package that had been addressed to Atwell's business, LA Courier Services. Unbeknownst to either of the men, the package, which was from China, had been intercepted by Customs and Border Protection (CBP) officers in California. The CBP officers discovered the package contained approximately three kilograms of methylone, a designer drug, and turned the package over to agents from Homeland Security Investigations (HSI) to effect a controlled delivery.

Immediately after Atwell picked up the package at the Post Office, his vehicle was boxed in by HSI agents and both men were arrested. HSI Agent James McDermott seized Castelluzzo as well as two cell phones which were in his lap. At either the scene of the arrest or the police station, Agent McDermott saw two text messages on Castelluzzo's cell phone screen that pertained to the package and the need to pick it up at the Post Office.[2]

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[2] The first text from "Ghost" stated "OK eagles landed and a slip was left I got 2 call the po." A1634. The second text from "Ghost" read: "I got 2 grab the package 2morrow at the po." *Id.*

2

The two text messages were set forth in affidavits in support of applications for search warrants for Castelluzzo's phones, his home, Atwell's phone, a flash drive Atwell possessed, the computer at LA Courier, and certain e-mail accounts.

After the arrest, the Supreme Court decided *Riley v. California*, 134 S. Ct. 2473 (2014), holding that police may not search a cell phone incident to arrest; rather, "a warrant is generally required before such a search." *Id.* at 2493. Thereafter, Castelluzzo moved to suppress the warrantless search of his cell phone, as well as other evidence obtained during the execution of several search warrants.

At the suppression hearing, Agent McDermott's testimony regarding when he first looked at the cell phone screen was equivocal. In some respects, Agent McDermott's testimony supported that he looked at the cell phone screen briefly at the scene. Yet other portions of Agent McDermott's testimony supported Castelluzzo's contention that the search of his cell phone did not occur until he was in the police station.[3] In fact, there is no dispute that at the police station Agent McDermott examined the cell phone for "approximately a half an hour," A167, to obtain numbers that had been called prior to the arrest, A151.

---

[3] On direct examination, Agent McDermott testified that he looked at the cell phone at the Manville Police Department. Thereafter, during cross-examination he stated that the "first time I looked through the cell phones was at the police department." A145. Yet Agent McDermott also testified that although he may have looked at the cell phone "briefly" at the Post Office, "it wasn't very long." A145. He admitted he was not sure if he did or did not look at the cell phone at the Post Office, but acknowledged that the purpose of looking through the cell phone was to see if they could make a controlled delivery to anyone else. A146. It was their "practice at the time to search a phone incident to arrest and we did that." A159. He reiterated that "[c]ommon practice would be to search the phone immediately." A175.

At the conclusion of the hearing, the District Judge found that Agent McDermott first looked at the cell phone screen while at the scene of the arrest, at which time he saw the two text messages, and that he looked at the cell phone more extensively after arriving at the police station. Although the initial search at the scene would be constitutionally infirm under *Riley*, the District Court concluded that McDermott's review of the texts at the scene was consistent with acceptable practice pre-*Riley*. The District Court further determined that the good faith doctrine applied and that there was no basis for suppressing the two text messages. The District Court did not make findings concerning the more extensive search of the cell phone at the police station because the government advised that it did not intend to use any evidence gained from that search.

Castelluzzo contends the District Court erred because the search of his cell phone was not incident to his arrest but occurred at the police station. This argument, though cloaked in legal principles, attacks the District Court's factual determination that Agent McDermott looked at the cell phone at the scene of the arrest and saw the two texts. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

As noted above, the record demonstrates that Agent McDermott's testimony at the suppression hearing was equivocal and therefore could support either the District Judge's factual findings or Castelluzzo's assertion that Agent McDermott did not look at the cell phone until he was at the police station. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v.*

4

*City of Bessemer City*, 470 U.S. 564, 574 (1985). Accordingly, the District Court's factual findings stand.

Castelluzzo next asserts that the District Court erred in its application of the good faith doctrine. This argument also lacks merit because it, too, is an attack upon the factual findings made by the District Court. We conclude that the District Court did not err in denying Castelluzzo's motion to suppress.[4]

Finally, Castelluzzo contends that the District Court erred in applying an enhancement under U.S.S.G. § 3B1.1(a) for his role in the offense as an organizer or leader of "criminal activity that involved five or more participants." We apply clear error review to a District Court's "factual determinations underlying the application of the sentencing guidelines, . . . [and] exercise plenary review over legal questions." *United States v. Helbling*, 209 F.3d 226, 242–43 (3d Cir. 2000).

The District Court carefully addressed Castelluzzo's arguments at sentencing and made specific factual findings that there were, at minimum, six individuals involved in distributing drugs. These findings are not clearly erroneous. Nonetheless, Castelluzzo contends the enhancement should not have been applied because the participants must be "criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1 n.1. From his perspective, the evidence supports only that he and Atwell conspired to distribute the four drugs set forth in the superseding indictment. In addition, Castelluzzo submits that

---

[4] Castelluzzo also asserts that the inevitable discovery doctrine raised by the government in the District Court, but which the Court did not address, is inapplicable. We need not consider this argument.

the District Court erred because it failed to recognize Third Circuit case law requiring that the "defendant must have exercised some degree of control over others in the commission of the offense." *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir. 1992) (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir. 1990)).

Neither assertion is persuasive. The argument that the District Court erred because Castelluzzo and Atwell were the only participants who could be criminally liable ignores that the offense of conviction was a § 846 conspiracy to distribute and possess with the intent to distribute the four controlled substances. It is well settled that a coconspirator need not know every detail or every person involved to be criminally liable for conspiracy. *See United States v. Perez*, 280 F.3d 318, 343 (3d Cir. 2002).

The District Court may not have explicitly focused on the degree of control necessary to apply the enhancement for being an organizer or leader under § 3B1.1(a). Nonetheless, the Court's factual findings directly concern the extent to which Castelluzzo exercised control and authority over the activities of the others in the conspiracy. The Court rejected the defense's contention that Castelluzzo had simply a buyer/seller relationship with the other participants in the conspiracy, noting that the participants had been put on the payroll. A1601. It explained that "Castelluzzo is directing where money is going to be wired and explaining to Atwell how to wire the money and how it's to be done." A1603. The Court acknowledged that Castelluzzo initially had no money, but that as time passed, he was "the one who is giving information and talking about" who does what and the amount that person will receive. A1604–05. Importantly, the Court declared that "Castelluzzo had the connections. He knew who they were. He got them together . . .

6

[and he] comes up with the ideas, and . . . had different ideas for different drugs at different times." A1605. These findings are not clearly erroneous and they are sufficient to support the District Court's determination that Castelluzzo was an organizer or leader.

We will affirm the judgment of the District Court.