30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie MOBLEY, a/k/a Eddie Country, Defendant-Appellant.
 No. 93-5576.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: July 20, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-92-18-P)
 Argued: Ashley Lee Hogewood, III, Cory Hohnbaum, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, for appellant.
 Gretchen C.F. Shappert, Asst. U.S. Atty., Charlotte, NC, for appellee.
 On Brief: Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant in this case raises numerous challenges to his drug and firearms convictions and to his resulting sentence. Because we find that these challenges are without merit, we affirm the judgment of the district court.
 
 I.
 
 2
 Kenneth Bernard Strothers, the organizer of a major cocaine base distribution network in Charlotte, North Carolina, was arrested in 1992 and convicted pursuant to a plea agreement with the government. Appellant Edward Mobley worked for Strothers from September 1990 up until the time of Strothers' arrest. During that time, Mobley's tasks included selling the crack cocaine and overseeing drug proceeds to ensure that proper amounts were collected. Evidence at trial indicated that Mobley often carried a firearm.
 
 
 3
 Mobley was arrested on February 4, 1992, at 1709 McDonald Street in Charlotte. At the time of his arrest, Mobley was found holding thirty-eight baggies containing crack cocaine. Police also recovered a loaded Ruger .9mm pistol less than three feet away from Mobley. Drugs were found in other parts of the house as well. Mobley was subsequently indicted on three charges: conspiracy to possess with intent to distribute cocaine base, see 21 U.S.C. Secs. 841(a)(1) & 846, possession with intent to distribute cocaine base, see 21 U.S.C. Sec. 841(a)(1), and possession of a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. Sec. 924(c)(1) & (2).
 
 
 4
 Appellant was tried before a jury on April 15 and 16, 1993. Several of the government's trial witnesses were fellow coconspirators who, like Strothers, were convicted pursuant to plea agreements. Those witnesses testified to Mobley's significant role in the conspiracy's operations. On April 16, the jury returned verdicts of guilty on all three counts. The district court sentenced Mobley to life imprisonment on the first two counts, as well as a consecutive term of five years for the firearms count. Mobley now appeals, alleging errors both during the trial and at sentencing.
 
 II.
 
 5
 Appellant's first set of claims allege errors at trial resulting in impermissible convictions. Mobley first contends that the district court erred in failing to grant his FED. R. CRIM. P.29 motion for acquittal on Count 3, claiming that the evidence presented at trial was insufficient to support a conviction on the firearms charge. See 18 U.S.C. Sec. 924(c)(1). Section 924(c)(1) provides for an additional five years of imprisonment for anyone who, "during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm." Id. Appellant contends that the government did not present evidence sufficient to prove that he knew of the gun's whereabouts or that he intended to use the firearm.
 
 
 6
 We find no merit in this claim. The jury's conclusion that appellant violated Sec. 924(c) must be sustained so long as it is supported by substantial evidence. See United States v. Paz, 927 F.2d 176, 178 (4th Cir.1991) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). In determining whether the evidence was sufficient,"we view the evidence and reasonable inferences drawn from it in the light most favorable to the government." United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992). Furthermore, given the "common sense recognition that drug dealing is a dangerous and often violent enterprise," United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988), juries are free " 'to infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture.' " United States v. Townley, 929 F.2d 365, 369 (8th Cir.1991) (quoting United States v. Young-Bey, 893 F.2d 178, 181 (8th Cir.1990)).
 
 
 7
 In this case, Charlotte Police Officer Joseph Neely, while executing a search warrant at the McDonald Street house, found Mobley sitting on a couch holding a significant amount of crack cocaine, only a few feet away from a loaded semi-automatic pistol. The gun was "present and accessible" to Mobley, and "there is little question that its presence would help facilitate the success of the criminal undertaking." Paz, 927 F.2d at 179. It makes no difference that Mobley did not own the house where the gun was found. See United States v. Wilson, 922 F.2d 1336, 1339 (7th Cir.1991); United States v. Poore, 594 F.2d 39, 43 (4th Cir.1979). The jury also heard testimony that Mobley often carried guns in connection with the conspiracy's activities. Given this evidence, a rational trier of fact easily could have concluded that the gun was present to facilitate the success of a drug trafficking offense. See Smith v. United States, 113 S.Ct. 2050, 2058-59 (1993). Accordingly, the district court properly denied appellant's Rule 29 motion.
 
 
 8
 Appellant's second challenge to his conviction is based on the district court's refusal to hold an evidentiary hearing to determine whether the government's witnesses discussed their testimony outside the courtroom. Mobley contends that several of his coconspirators, who were testifying against him at trial, were impermissibly placed in a single holding cell before and after giving their testimony. Mobley argues that the potential for discussion among the witnesses infected the result of his trial.
 
 
 9
 This claim fails for several reasons. First, appellant's trial counsel failed to make a pre-trial motion requesting that the witnesses be held separately. Second, the district court instructed the witnesses not to discuss their testimony after they returned to the holding cell, and permitted defense counsel to cross-examine government witnesses as to the extent of any such conversation. Despite the permitted broad scope of cross-examination, appellant was unable to present any evidence of significant discussion of substantive testimony among the witnesses. Finally, the witnesses were properly barred from sitting in the courtroom during each other's testimony, thereby blocking their ability to directly assess their coconspirators' statements at trial. Given the various precautions taken by the district court with respect to the government witnesses, we find no error in the court's refusal to hold a mid-trial evidentiary hearing.
 
 III.
 
 10
 Appellant next raises a series of challenges to his sentence. We address each contention in turn.
 
 A.
 
 11
 Appellant's first claim is that his base offense level--which is grounded on the amount of crack cocaine in the conspiracy which was reasonably foreseeable to him--was improperly calculated. Mobley's base offense level of 38 was predicated on his knowledge of at least 3.5 kilograms of cocaine base within the conspiracy's operations. See U.S.S.G. Sec. 2D1.1(c)(3). We note from the outset that the district court's finding as to the amount of drugs attributable to Mobley is a factual determination that will not be disturbed unless clearly erroneous. See United States v. Adams, 988 F.2d 493, 495 (4th Cir.1993); United States v. Williams, 986 F.2d 86, 90 (4th Cir.1993).
 
 
 12
 Appellant claims that the district court could not calculate his sentence based on 3.5 kilograms of crack cocaine because other members of the conspiracy were sentenced for lesser amounts. Despite appellant's assertions otherwise, consideration of this claim would require the court to engage in a proportionality analysis, i.e., to compare coconspirators' sentences. We decline to do so, as several circuits have refused to engage in such a comparison of coconspirators' sentences. See United States v. Guerrero, 894 F.2d 261, 267 (7th Cir.1990); United States v. Pierce, 893 F.2d 669, 678 (5th Cir.1990); see also United States v. Goff, 907 F.2d 1441, 1447 (4th Cir.1990) (collecting cases). Accordingly, in determining whether the district court properly calculated Mobley's base offense level, we look only to the evidence regarding the amount of drugs foreseeable to Mobley.
 
 
 13
 The record before us indicates that the district court was not clearly erroneous in attributing 3.5 kilograms to appellant. The court found that Mobley was a significant participant in the conspiracy who oversaw the finances for a portion of its operations. Additionally, the district court heard testimony, both at trial and during sentencing, indicating that substantial amounts of cocaine base were handled by Mobley's various coconspirators. At sentencing, for example, FBI Agent Schwein testified to the amount of crack cocaine reasonably foreseeable to Mobley. Agent Schwein noted Kenneth Strothers' statements that his drug business generated up to $150,000 a week and that Mobley himself sold up to $15,000 of cocaine base per day. In addition to presenting the statements of several other conspirators, Schwein pointed to Mobley's own statement that he sold up to $8000 of cocaine base in a single day. Given the transaction of such large amounts of crack cocaine--$150,000 represents approximately 1.5 kilograms of cocaine base--over such short periods of time, the district court's reliance on Agent Schwein's testimony that at least 3.5 kilograms of cocaine base were foreseeable to Mobley was not clearly erroneous. This is especially so given the court's finding that Mobley was a major participant in the conspiracy, someone who would be aware of much of its dealings.
 
 
 14
 In this case, the government met its burden of proving, by a preponderance of the evidence, the quantity of drugs properly attributable to appellant. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993). The district court heard argument from both sides and specifically addressed the amount foreseeable to Mobley himself. Accordingly, the court's calculation of the base offense level will not be disturbed.
 
 B.
 
 15
 Mobley also challenges the district court's application of enhancements to his base offense level and the court's computation of his criminal history score. Again, all of these contentions are without merit.
 
 
 16
 At sentencing, the district court applied a three-level enhancement to appellant's base offense level based on Mobley's role as a manager in the conspiracy. See U.S.S.G. Sec. 3B1.1(b). Mobley contends that his role in the offense should have resulted in only a two-level enhancement. The district court's determination concerns an issue of fact and is reviewable under the clearly erroneous standard. See United States v. Smith, 914 F.2d 565, 569 (4th Cir.1990).
 
 
 17
 Here, the district court had ample evidence to support its determination that appellant was a manager, and that the criminal activity involved five or more participants. See U.S.S.G. Sec. 3B1.1(b). At trial, the court heard one of Mobley's coconspirators testify that appellant was an "overseer" whose role was to ensure that "the money was right." At sentencing, the court heard additional argument that Mobley managed one of the conspiracy's crack houses. The court was presented with evidence sufficient to support the finding that appellant was, at a minimum, a manager of the conspiracy's property. At the time of sentencing, that showing was sufficient to support an enhancement under Sec. 3B1.1. See United States v. Chambers, 985 F.2d 1263, 1268 (4th Cir.1993).* Accordingly, it was not clear error for the court to conclude that Mobley was a manager under the definition included in Sec. 3B1.1(b), and therefore to apply a three-level enhancement.
 
 
 18
 The court also applied a two-level enhancement for obstruction of justice based on Mobley's perjury at trial. See U.S.S.G. Sec. 3C1.1. Appellant contends that the enhancement for perjury was erroneous because the district court did not make all of the necessary findings, namely that the testimony was material and wilfully false.
 
 
 19
 It is certainly true that appellant "cannot be assessed an increase under Sec. 3C1.1 simply because he ... plead[ed] not guilty." United States v. Wallace, 904 F.2d 603, 604 (11th Cir.1990). It is equally true, however, that "the giving of false testimony under oath is not imbued with any ... constitutional protection." Id.; see also United States v. Grayson, 438 U.S. 41 (1978). In the case before us, the court was presented with testimony indicating that Mobley stated to FBI Special Agent Brian Roepe that he had purchased and possessed fire arms during the course of the conspiracy. At trial, however, Mobley expressly denied making those statements. Mobley similarly denied running a crack house and selling cocaine base. Mobley's denial of the statements to Agent Roepe could have influenced the jury's consideration of the firearms charge, and his denial of participation in the crack house operations was undoubtedly material to the drug charges. The court reviewed the arguments of both parties at sentencing before finding that Mobley gave false testimony at trial. Given that the court was not required to address each element of the perjury in a separate finding, see United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993), its consideration of the issue was sufficient to support the two-level enhancement for obstruction of justice.
 
 
 20
 Finally, Mobley challenges the district court's calculation of his criminal history score, contending that two of his prior prison sentences were related and thus could not be considered separately in the computation of his criminal history. See U.S.S.G. Sec. 4A1.2(a)(2). Mobley argues that the two sentences, both for the possession of stolen goods, must be considered related because they resulted from offenses that were consolidated for trial and sentencing. See Sec. 4A1.2, comment. (n.3). Accordingly, he claims that the court erred in assessing three criminal history points for each of the two sentences.
 
 
 21
 Here, the district court's determination that the two sentences were not related, and thus could be counted separately, was not clearly erroneous. See United States v. McManus, --- F.3d ---- (4th Cir. May 6, 1993) (No. 92-5876). Although Mobley received the two sentences at the same time, the underlying offenses occurred on two separate days. The offenses were not only distinct in time, but in the goods possessed as well. On October 21, 1984, Mobley possessed stolen electronic equipment valued at more than $16,000. On November 15 of that year, he possessed additional stolen equipment as well as a stolen firearm. The probation officer stated in an addendum to the presentence report that a review of the two judgments, obtained from the sentencing court, indicated that the offenses "are entirely unrelated under the provisions of Sec. 4A1.2." Thus, although Mobley received the two sentences on a single day, there is nothing to indicate that the offenses were in any way related to one another. Given the distinct nature of the offenses, the district court was not clearly erro neous in concluding that they could be counted separately for the purpose of calculating appellant's criminal history score.
 
 IV.
 
 22
 For the foregoing reasons, the judgment of the district court is
 
 
 23
 AFFIRMED.
 
 
 
 *
 Subsequent to Mobley's sentencing, the Sentencing Guidelines were amended by the addition of a new Application Note toSec. 3B1.1. That note states that, in order to qualify for an adjustment under the section, the defendant must be the manager of other participants in the conspiracy. See United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1, comment. (n.2) (Nov.1993). Accordingly, under the current Guidelines, management of property will not suffice for an enhancement under Sec. 3B1.1. The new note does not apply to Mobley's sentencing, however, because "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. Sec. 1B1.11(a); see United States v. Havener, 905 F.2d 3, 7-8 (1st Cir.1990). The new note became effective on November 1, 1993, several months after appellant's sentencing