UNITED STATES of America, Plaintiff,

v.

Richard Caleb JAMES, Defendant.

Crim. A. No. 2:94cr69.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 10, 1995.

Kevin Comstock, Asst. U.S. Atty., Norfolk, VA, for plaintiff.

Andrew A. Protogyrou, Knight, Dudley, Dezern & Clarke, Norfolk, VA, for defendant.

## MEMORANDUM ORDER

DOUMAR, District Judge.

In light of changes made to the sentencing guidelines, an issue has arisen in this case as to whether defendant Richard Caleb James' role in the offense calls for a four-level enhancement as an "organizer or leader" under USSG § 3B1.1(b). As an individual supplier of cocaine to a major drug ring, the defendant supplied in excess of 250 kilograms of cocaine to the ring. Although the government originally supported enhancement on this basis, the Assistant United States Attorney is now in agreement with defense counsel that no aggravating role enhancement is applicable under current guidelines. The probation department maintains that the four-level enhancement applies under *United States v. Chambers*, 985 F.2d 1263 (4th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993), which held that a defendant may be a manager even if he did not directly supervise other persons. After briefing and consideration of the matter, the Court is in agreement with counsel that no aggravating-role enhancement is appropriate because of the changes in the commentary, also called application notes, affecting this provision.

### I. FACTS

There is no need to belabor all of the facts surrounding this major drug conspiracy. The most relevant facts concern James' role. In 1989 and 1990, James was the main source of supply to a cocaine ring organized and operated by brothers Aaron and Jerrell

Thomas in the Eastern District of Virginia and elsewhere. James obtained the cocaine during this period from Pedro Vasallo, who had Colombian connections, and for whom James had brokered cocaine in the Carol City, Florida area since 1987. In 1989, James began supplying cocaine to the Thomas brothers. The Vasallo connection dried up for James in 1991, and the Thomases turned to Carlos Diaz. From 1989 until 1991, James brokered approximately 244 kilos of powder cocaine from Pedro Vasallo to the Thomas brothers. (Sentencing Aff. of Agent Bradley at 6). In 1993, James began getting a supply from Diaz, and that year he and Aaron Thomas received approximately 15 kilos from Diaz. (*Id.*). The government and the defendant agree on the total of reflected in the sentencing affidavit of 259 kilos attributable to James.[1] There is no evidence that James had supervisory control over any other participants in the conspiracy. The Assistant United States Attorney states that "JAMES, however, did not actively supervise any individuals that this office was able to identify. He was, rather, the link between Vassalo's [sic] drug organization and the Thomas drug organization." (Position of the United States and Memorandum of Law Regarding the Defendant's Role in the Offense Adjustment at 1). However, the PSR alleges that James fixed the price and quantity at which he sold the cocaine and made arrangements to meet the Thomas couriers to exchange the money and drugs. *See* PSR ¶ 30. The probation department apparently takes the position that the setting of the price factor was particularly significant in the department's determination that the enhancement still applies.

### II. LEGAL ANALYSIS

The new commentary states in its entirety:

---

1. The PSR suggests a higher amount but there appear to be problems with some of the amounts the PSR attributes to James. For example, in ¶ 35, "Acceptance of Responsibility", James is reported to have admitted that the *most* he ever sold in one week was ten kilos. But in ¶ 31, it is reported that Pedro Vasallo supplied James with 40 kilos *every month* for 5 full years—from 1986 until 1991—even though every other document the court has seen reports James first meeting

Vasallo in 1987. Even the PSR at one place puts the first meeting of James and Vasallo in 1987. *See* PSR ¶ 8. The PSR concedes that the government is only attributing 150 to 500 kilos to James, but takes the position that this is not reflective of the true situation. However, most of the other documentation, such as the sentencing affidavit and James own admissions, seems to bear out the government's figure of approximately 259 kilos.

Amendment 500. The Commentary to § 3B1.1 captioned "Application Notes" is amended by renumbering Notes 2 and 3 as 3 and 4, respectively; and by inserting the following additional note:

"2. To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.".

This amendment clarifies the operation of this section to resolve a split among the courts of appeal. *Compare United States v. Carroll,* 893 F.2d 1502 (6th Cir.1990) (requiring degree of control over other persons for § 3B1.1 to apply); *United States v. Fuller,* 897 F.2d 1217 (1st Cir. 1990) (same); *United States v. Mares–Molina,* 913 F.2d 770 (9th Cir.1990) (same) *and United States v. Fuentes,* 954 F.2d 151 (3d Cir.) (same), *cert. denied,* 504 U.S. 977, 112 S.Ct. 2950, 119 L.Ed.2d 573 (1992) *with United States v. Chambers,* 985 F.2d 1263 (4th Cir.1993) (defendant may be a "manager" even though he did not directly supervise other persons). The effective date of this amendment is November 1, 1993.

1994 USSG *Guidelines Manual* App. B & C at 403–04.

■ An initial threshold issue is whether the commentary to the guidelines is binding upon the courts. The answer for purposes of this present issue is yes. *See United States v. Hunter,* 19 F.3d 895, 896 (4th Cir.1994) (citing *Stinson v. United States,* — U.S. —, —, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993) to effect that commentary that does not conflict with the Constitution, a federal statute, or a Guidelines provision is binding).

■ The question then becomes whether this new section "resolving" the circuit split has the effect of overruling that aspect of *Chambers* which permitted an enhancement in the absence of any control over, or

organization of, other participants. In an unpublished opinion, the Fourth Circuit has suggested that the answer is yes. *See United States v. Mobley,* 30 F.3d 132 (4th Cir. July 20, 1994), 1994 WL 378052 at *4–*5 n*, which stated after the text in the opinion cited *Chambers* to the effect that managing property alone (a "crack house") supported an aggravating role enhancement without supervision of other participants:

> Subsequent to Mobley's sentencing, the Sentencing Guidelines were amended by the addition of a new Application Note to 3B1.1. That note states that, in order to qualify for an adjustment under the section, the defendant must be the manager of other participants in the conspiracy. [citing commentary] *Accordingly, under the current Guidelines, management of property will not suffice for an enhancement under § 3B1.1.* [However, the new note did not apply to the defendant because he was sentenced before the effective date.]

(emphasis added). Moreover, prior to the new commentary, the Seventh Circuit held the view of the Fourth Circuit that control over others was not required for the enhancement and that circuit has since published cases holding that the new commentary effectively overruled the previous case law. *See United States v. Fones,* 51 F.3d 663, 666–670 (7th Cir.1995) (new note changed previous view; defendant must have control over at least one participant; control over assets and the like can support an upward departure under the note but not the application of a § 3B1.1 enhancement), *see also United States v. Mustread,* 42 F.3d 1097, 1103–05 (7th Cir.1994) (reversing district court's imposition of enhancement because defendant "was at the top of a drug distribution network"; even large wholesale marijuana distributor who exercises decision making authority over his purchases must also have been an organizer, leader, manager, or supervisor of those to whom he distributed).

The other circuits agree that control or influence of others is now explicitly required by the new note. For example, the Fifth Circuit has stated that the note was a response to *Chambers* and that control of as-

sets does not support a four-level enhancement. *See United States v. Ronning*, 47 F.3d 710 (5th Cir.1995), (in mail fraud case, CEO of loan brokering business was not a "leader or organizer" over firm's president even though he had more client contact because he was not shown to have direct or indirect control over the president). *See also, e.g., United States v. Greenfield*, 44 F.3d 1141, 1146 (2d Cir.1995) (current version of § 3B1.1 application note 2, by allowing upward departure for those who exercise management responsibility over property, assets, or activities while requiring control or influence over another participant for enhancement "by negative implication ... seems clearly to preclude management responsibility over property, assets, or activities as the basis for an enhancement under § 3B1.1(c)").

Moreover, merely the fact that James conspired with others who organized or led the conspiracy does not mean that his individual role in the offense can be enhanced on that basis. The Fourth Circuit has made it clear that "[b]y their very nature, the role in the offense adjustments cannot be based upon the actions of co-conspirators; for example, a defendant who was not the organizer of criminal activity could not receive role enhancement merely because it was reasonably foreseeable that a co-conspirator would organize a criminal scheme." *United States v. Moore*, 29 F.3d 175, 179 (4th Cir.1994).

### CONCLUSION

In the light of the authority to the effect that control or influence over another is required for the enhancement to apply, the court FINDS that the enhancement does not apply in this case because of the change in the applicable commentary. There is no evidence that James organized or controlled any other participant in the conspiracy, although he dealt in large wholesale amounts of cocaine. Even though the only published opinion of this circuit held to the contrary, it is clear that the Fourth circuit court of Appeals would find the changes in the commentary to be binding. In this case, James appears to be the quintessential "middleman" or broker,

dependent on his own source of supply[2] as well as dependent upon those to whom he distributed. To the extent he may have controlled the price at which he sold, each person would, but he would be controlled in large part by the market conditions. It appears to the court that the Fourth Circuit, as evidenced by the nonprecedential, unpublished *Mobley* case *supra*, would follow the Seventh Circuit in frankly acknowledging that the new application note changes previous results derived from cases such as *Chambers*. There simply is no evidence that anyone worked for James, or was managed, organized, or controlled by him. Accordingly, the USSG § 3B1.1(b) enhancement does not apply to Richard Caleb James.

The Clerk of the Court is DIRECTED to forward copies of this order to counsel for the parties.

IT IS SO ORDERED.

---

**2.** As evidenced by his dropping from the picture when Vasallo ceased supplying him.