UNITED STATES of America

v.

**Daniel Pedrosa FUENTES, Appellant.**

**No. 90–1929.**

United States Court of Appeals, Third Circuit.

Argued Sept. 4, 1991.

Decided Jan. 17, 1992.

Jack A. Meyerson (argued), Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Timothy R. Rice (argued), Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Before STAPLETON, GREENBERG and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal presents the issue of whether a defendant in a federal criminal prosecution can be sentenced under United States Sentencing Guideline § 3B1.1 as a "supervisor" or "manager" in the absence of evidence that he or she directed the activities of at least one other person.[1] The district court found that Daniel Pedrosa Fuentes had been a "supervisor" or "manager" without such evidence because he had "managed a crackhouse." Because we disagree with the district court's interpretation of § 3B1.1, we will vacate the sentence and remand to the district court for resentencing.

### I.

Mr. Fuentes was convicted of conspiracy to possess cocaine with intent to deliver, 21 U.S.C. § 846, actual possession of cocaine with intent to deliver, 21 U.S.C. § 841, and aiding and abetting, 18 U.S.C. § 2. These charges arose from Mr. Fuentes' participation in a drug organization operating in Philadelphia. Romona Garcia, a codefendant, was the leader of this organization, which sold approximately three kilograms of cocaine per week through street vendors and two "crack houses." The drug ring was exposed when Emilio Sauris, who was both a paid DEA informant and Ms. Garcia's godson, passed information about the

organization's activities to the authorities. Mr. Sauris reported that Ms. Garcia and Mr. Fuentes traveled to Florida to purchase a large quantity of cocaine. When the pair returned from their trip, Mr. Sauris observed Ms. Garcia open kilogram packages of cocaine at one of the crack houses (the "American Street" house). He also saw Mr. Fuentes "cook" the cocaine in order to produce crack and saw Ms. Garcia put the crack into glass vials.

Based upon this and other information, DEA agents obtained and executed search warrants for the two crack houses. During the search of the American Street house, the agents discovered a large quantity of cocaine, a wide variety of drug paraphernalia and nearly $59,000 in cash. In addition, the agents seized mail and clothing belonging to Mr. Fuentes. Based upon this evidence and Mr. Sauris' testimony at trial, the prosecution established that Mr. Fuentes lived in the house and was essentially in charge of it, conducting and safeguarding its operations.

During the sentencing of Mr. Fuentes, the district court set Mr. Fuentes' criminal history category at I and his base offense level at 32. It then adjusted the base offense level upward by three levels under § 3B1.1(b) based upon the conclusion that Mr. Fuentes was a manager or supervisor of the drug organization. This adjustment yielded a total offense level of 35 and a sentencing range of 168–210 months. The court sentenced Mr. Fuentes to 189 months imprisonment.

When reviewing the sentencing decisions of the district courts, "[w]e exercise plenary review over legal questions about the meaning of the sentencing guidelines, but apply the deferential clearly erroneous standard to factual determinations underly-

---

[1] Mr. Fuentes also raised the following issues in challenging his conviction:

  1. The court permitted the introduction of testimony concerning irrelevant and highly prejudicial matters, which was inadmissible pursuant to the Federal Rules of Evidence.

  2. The court erred in permitting the Assistant United States Attorney to conduct a redi-

rect examination far beyond the scope of defense counsel's cross-examination.

  3. The court erred in admitting hearsay testimony which was not made in furtherance of any alleged conspiracy.

We have considered Mr. Fuentes' arguments with regard to these issues and find them to be without merit.

ing their application." *United States v. Inigo*, 925 F.2d 641, 658 (3d Cir.1991).

## II.

■ The outcome in this case rests on whether an increase in offense level under U.S.S.G. § 3B1.1 for a defendant's aggravating role in the offense requires that the district court find that the defendant exercised control over at least one other person. Section 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The district court based its decision to impose a three-level increase on the following finding during the sentencing hearing.

I must say I'm influenced by the fact of the $59,000 in cash that was found on the premises, the amount of cocaine that was found, the drug paraphernalia that was found on the premises. I think he was in charge of safeguarding, supervising the control of the money and the cocaine and also in charge of whatever the manufacturing process is that converts the cocaine into the crack that's sold on the street and you're talking about kilogram quantities of cocaine.

I'm also influenced by the trial testimony of the confidential informant that he [Fuentes] takes care of the house and [of] the material and [of] the money. He wasn't the janitor. He was in charge of that particular house on North American Street and I think also that he did accompany the principal organizer to Florida to purchase kilogram quantities of cocaine. If he was just a cooker or a janitor, I don't think the leader of the cocaine business would have taken him to Florida. I think that indicates he had a more significant role in the enterprise, that he was a trusted person and that the leader of the organization took him to Florida in his capacity as a manager or supervisor of in effect the manufacturing and storage and distribution aspects of the conspiracy.

App. at A94–95. There is no evidence in the record indicating that anyone worked for or under the direction of Mr. Fuentes; the district court based its decision to impose the three-level increase on the fact that Mr. Fuentes managed or supervised the crack house rather than other people.

We acknowledge at the outset that a person can aptly be described as "managing" or "supervising" a building, investments, or many other tangible or intangible "things." Nevertheless, we believe that in the context of § 3B1.1, it makes more sense to confine the terms "managing or supervising" to the narrower sense in which they are commonly used, as referring to the management or supervision of other people.

As we pointed out in *United States v. Bierley*, 922 F.2d 1061, 1065 (3rd Cir.1990), the "adjustments authorized [by §§ 3B1.1 and 3B1.2] for role in the offense are directed to the relative culpability of participants in group conduct." When the terms "manage" and "supervise" in § 3B1.1 are limited to the management or supervision of other persons, they serve well the purpose of assigning relative fault among criminal coadventurers. When a person manages or supervises another in the course of a criminal enterprise, the manager or supervisor will normally be more culpable than the person managed or supervised. On the other hand, when those terms are read to apply as well to tangible or intangible things, their utility in assessing relative fault is greatly diminished, if not destroyed. The lowliest participant in a criminal enterprise can ordinarily be said to manage, in the broad sense of that word,

some segment or property of the enterprise. Thus one can describe the street corner peddler of drugs as managing the drug ring's "Fourth and Market operation," or the ring's packager as managing its packaging operation. For this reason, we hold that § 3B1.1 should be given the narrower reading and that a defendant's offense level may not be increased under that section in the absence of evidence that he or she managed or supervised someone else.

In so holding, we join the majority of the courts of appeals that have addressed the issue. The Court of Appeals for the First Circuit has twice visited this question. First, in *United States v. Fuller*, 897 F.2d 1217 (1st Cir.1990), the court was faced with a defendant who had distributed truckloads of marijuana. No evidence was adduced showing that the defendant exercised control over others. Nevertheless, the sentencing court imposed a 2-level increase under § 3B1.1(c) based primarily on the large quantities of marijuana involved. The court of appeals reversed stating that:

> the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms "organizer, leader, manager, or supervisor," each of which suggests the presence of underlings or subordinates.

In *United States v. Akitoye*, 923 F.2d 221 (1st Cir.1991), the court applied the rule of *Fuller* in upholding a sentence adjustment under § 3B1.1(b). The defendant was a drug dealer who controlled the person who actually made the sale. The salesman would bring the purchaser to the defendant's apartment, would take in the money and then bring the drugs to the waiting buyer. The court upheld the increase because there was a sufficient showing that the defendant controlled another person in the criminal activity.

> [T]he fact that the presentence report erroneously hinged the role-in-the-offense adjustment on [defendant]'s control over the heroin rather than his control over [the salesman] was beside the point. What matters is that the court did not make the same mistake.

The lead of the Court of Appeals for the First Circuit has been followed by other courts. *See United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir.1991) (the defendant's conduct was such that it supported an inference of control over others); *United States v. Mares–Molina*, 913 F.2d 770, 772 (9th Cir.1990) ("some degree of control or organizational authority over others is required in order for section 3B1.1 to apply."); *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990) (citing *Fuller* with approval in upholding 4-level increase under § 3B1.1(a)), *cert. denied*, —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). *But see Mares–Molina*, 913 F.2d at 774 (Rymer, J., dissenting) ("I respectfully dissent, because one may 'manage' a *thing*, such as a business or money or a warehouse, as well as a *person*.") (emphasis in original).

To the extent that the Courts of Appeals for the Eighth and Fourth Circuits have taken a contrary position in *United States v. Johnson*, 906 F.2d 1285 (8th Cir.1990), and *United States v. Paz*, 927 F.2d 176 (4th Cir.1991), we respectfully disagree.

### III.

■ Because there was no evidence that Mr. Fuentes controlled others in the drug organization [2] and because the trial court based its sentencing decision on the fact that Mr. Fuentes managed the crack house rather than that he managed other participants in the criminal activity, we will va-

---

2. The government argued at the sentencing hearing that supervision of people is implicit in the fact that Mr. Fuentes managed the crack house. The prosecutor maintained that street sellers and couriers would naturally have been under Mr. Fuentes' control. App. at A–93.

However, the district court did not rely on this inference in imposing the level increase. We express no opinion as to whether the district court should draw such an inference from the evidence on resentencing Mr. Fuentes.

cate the sentence imposed by the district court and remand for resentencing.