UNITED STATES of America,

v.

John DUFRESNE, Appellant,

United States of America,

v.

Mark Lanzilotti a/k/a Lance Mark Lanzilotti, Appellant.

Nos. 01–1168, 02–1929.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 17, 2002.

Decided Jan. 17, 2003.

Before NYGAARD, ALITO and McKEE, Circuit Judges.

## OPINION

McKEE, Circuit Judge.

John Dufresne and Mark Lanzilotti appeal from their judgments of conviction and sentence for offenses arising out of a methamphetamine manufacturing and distribution scheme. Although the circumstances of this case are bizarre, we find no reversible error, and we will affirm for the reasons set forth below.

## I.

A federal grand jury returned a nine-count indictment charging ten men, including Dufresne and Lanzilotti, with offenses arising out of a two-year scheme to manufacture and distribute more than $1 million worth of methamphetamine. Dufresne was charged only in count one with conspiracy to manufacture, distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. Lanzilotti was charged in count one and in counts four and five with manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Of the ten defendants charged, only Dufresne and Lanzilotti went to trial.[1]

Following a seven-day jury trial, Dufresne and Lanzilotti were found guilty as charged. The jury made a specific finding beyond a reasonable doubt than the rele-

1. Six co-defendants pled guilty to the indictment (Dennis Virelli, Brian Elliot, Phillip Andrews, Joseph Toritto, Michael Virelli and Leonard Wideman). One co-defendant (Michael Guida) pled guilty to bookmaking and one co-defendant (John Britt) died.

vant offenses of Dufresne and Lanzilotti involved more that one kilogram of methamphetamine. The jury also found Dufresne liable for forfeiture of $30,000 in drug proceeds and Lanzilotti liable for forfeiture of $66,000 in drug proceeds under 21 U.S.C. § 853.

The district court sentenced Dufresne to 360 months in prison, ten years of supervised release, a $10,000 fine, and a $100 special assessment. Shortly thereafter, the district court sentenced Lanzilotti to life in prison, five years of supervised release and a $300 special assessment.

Dufresne and Lanzilotti file timely appeals, at Nos. 01–1168 and 02–1929 respectively. Each is discussed separately.

## II.

### A. Dufresne's Appeal (No. 01–1168).

Dufresne argues that the district court abused its discretion in precluding him from arguing vindictive prosecution and related claims to the jury, and that these errors entitle him to a new trial. The factual background to his argument is as follows.

On Friday evening, October 20, 2000 (three days before his trial was to begin), the government learned that Dufresne's counsel intended to call at trial various members of the family of one of the prosecutors, Assistant United States Attorney ("AUSA") Robert K. Gordon. Government counsel called this to the attention of the district court on Monday, October 23rd, before the start of jury selection, and requested an offer of proof. Dufresne's counsel responded that he intended to call Francine and Robert Palladino, the sister and brother-in-law of AUSA Gordon, not to suggest any impropriety

but only to testify that they were friends of Dufresne and had loaned him small amounts of money during the time of the charged conspiracy. The purpose of the testimony, explained counsel, was to establish that Dufresne had some means of financial support and, therefore, was not likely to be involved in the methamphetamine conspiracy. Over the government's objection, the district court ruled that testimony for this purpose would be relevant and admissible.

On October 26, 2000, toward the close of the government's case, government counsel inquired whether Dufresne's counsel still intended to call Mr. and Mrs. Palladino as witnesses. Dufresne's counsel said that he did, and that the intended to call still another relative of AUSA Gordon in order to demonstrate that the prosecution was improperly motivated.[2] However, when the expansion of Dufresne's counsel's proffer was reported to the district court, counsel informed the court that he would not call the additional witness, but would rely solely on Robert Palladino's testimony. Defense counsel admitted that the purpose of Robert Palladino's testimony went beyond the original proffered purpose and now suggested that there was "something fishy" in the prosecution's motives.

The district court ordered Dufresne to submit a written offer of proof, and asked the government to respond with a motion *in limine* if it wished to exclude this testimony. Dufresne's counsel provided the following written offer of proof:

> Defense intends to call Bobby Palladino, who will testify that he is the owner proprietor of Babadino's Pizza Shop in Westmont, New Jersey and that he is

---

**2.** At this point, the government withdrew AUSA Gordon from further proceedings in connection with the trial.

married to Frances (Franny) Palladino, formally (sic) Franny Gordon, the sister of one of the assigned United States Attorneys in the prosecution of this case, Robert Gordon.

Mr. Palladino will further testify that in the years 1996 and 1997, that he would, from time to time, lend the defendant, John Dufresne, money in sums ranging from $50 to a couple of hundred dollars. Mr. Palladino will further testify that he and his wife received phone calls from A.U.S.A. Robert Gordon after May of 1997 but prior to October of 1999, requesting that they use their influence to persuade John Dufresne to cooperate with the FBI.

Mr. Palladino will further testify that A.U.S.A. Robert Gordon called him to inform him that John Dufresne was going to be indicted which information Bobby Palladino passed on to John Dufresne prior to his arrest.[3]

The defendant, through counsel, also intends to cross-examine Joe Albanese to establish that A.U.S.A. Robert Gordon was an Assistant United States Attorney who negotiated the plea agreement with his attorney and helped prepare him and examined [him] in both of his Grand Jury appearances.[4] The record in the trial already demonstrates that defendant, John Dufresne, was neither arrested nor charged in the New Jersey conspiracy to maintain a production facility, distribute and possess with intent to distribute methamphetamine and that Mr.

Dufresne was first charged for this conspiracy in the instant Federal indictment.[5]

Dufresne's counsel offered the following explanation of the relevance of this evidence:

> That evidence could result in a jury determination that due to the fact that the defendant was not arrested nor charged in the precursor New Jersey case, but was first charged in the Federal case, and due to the facts that the assigned AUSA who had handled the charges against the first cooperating federal witness was related to a friend of Dufresne, that the AUSA attempted to communicate with and request that those family members use their influence with John Dufresne to encourage him to cooperate, and that upon his failure to cooperate was indicted, that the indictment of John Dufresne was retaliatory.

In response to this written offer of proof and the government's motion *in limine* in response, the district court issued an order, dated October 27, 2000, providing:

> 1. Counsel for the Defendants are hereby precluded from eliciting testimony intended to demonstrate vindictive prosecution or to argue vindictive prosecution to the jury;
>
> 2. Counsel for the Defendants are hereby precluded from referring to Assistant United States Attorney Robert

---

**3.** The government denies that AUSA Gordon called the Palladinos "requesting that they use their influence to persuade John Dufresne to cooperate with the FBI" and that it called Mr. Palladino to inform him of Dufresne's pending indictment.

**4.** Albanese was a close associate of the alleged leader of the methamphetamine operation, Dennis Virelli, *see n. 1, supra.* Albanese was a cooperating witness at the trial.

**5.** Some of the methamphetamine manufactured in the scheme was manufactured in New Jersey. The New Jersey authorities indicted some of the defendants in this case, charging them with operating a methamphetamine manufacturing and distribution scheme. However, Dufresne was not charged in that New Jersey indictment.

K. Gordon by name during the questioning of witnesses or eliciting his name during the questioning of any witnesses; 3. Counsel for the Defendants shall not make further references to the charging decisions by the State of New Jersey; and

4. If counsel for Defendant Dufresne elicits testimony on direct or cross-examination of any witness intended to demonstrate that the Government prosecuted Defendant Dufresne for an improper purpose, or that the Government suborned perjury from its witnesses, the Government will be permitted to elicit rebuttal testimony in order to fully set forth its version of the facts concerning how Defendant Dufresne became a target of investigation, notwithstanding any previous rulings by this Court restricting the scope of testimony by Government witnesses or the mention of Joseph Merlino.

Dufresne argues that this order was an abuse of discretion for a number of reasons,[6] each of which we discuss separately.

### (i). Vindictive Prosecution.

■ Dufresne claims that the district court's order improperly precluded him from proving vindictive prosecution to the jury. We disagree. First of all, a claim of vindictive prosecution is not permissible argument to a jury. It is properly raised in a pretrial motion to dismiss the prosecution. *United States v. Berrigan*, 482 F.2d 171, 174–76 (3d Cir.1973). In *Berrigan*, we affirmed the district court's rejection of an attempt by the defendants to introduce evidence of discriminatory prosecution to the jury, and explained:

[Defendants'] argument misconceives the proper division of responsibility between judge and jury in a federal criminal proceeding. By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of [the defendants], but rather addresses itself to a constitutional defect in the institution of the prosecution. Rule 12(b)(2), F.R.Cr.P., provides: "Defenses and objections based on defects in the institution of the prosecution ... may be raised only by motion before trial."

Dufresne did raise the issue of vindictive prosecution before trial. Accordingly, the district court did not abuse its discretion by precluding him from arguing vindictive prosecution to the jury.

■ Moreover, Dufresne's claim of vindictive prosecution, based on his belief that he was indicted because he failed to cooperate, is meritless. Although the government may not retaliate against a defendant for exercising legal rights, "in the 'give and take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). In *Bordenkircher*, the Supreme Court held that there was no vindictive prosecution when the prosecutor, after the defendant refused to plead guilty to the original charges carrying a sentence of two to ten years incarceration, indicted the defendant under a recidivist statute carrying a mandatory life term. *Id.* at 358–59, 365. *See also United States v. Oliver*, 787 F.2d 124, 125–26 (3d Cir.1986) (no prosecutorial vindictiveness

---

**6.** We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed broadly in the context of Fed.R.Evid. 403. *United States v. Mathis*, 264 F.3d 321, 326–27 (3d Cir.2001).

where federal charges were brought because defendant failed to cooperate satisfactorily with local authorities). Thus, even if it is assumed that Dufresne was indicted because he failed to cooperate, the prosecution was not vindictive or in retaliation for refusing to cooperate.

Finally, while Dufresne suggests that there is something improper about a prosecutor approaching a suspect through the prosecutor's brother-in-law (an allegation that the government denies), Dufresne never explains what that impropriety is.

### (ii). Violation of Sixth Amendment Confrontation Right.

■ Dufresne argues that he was denied his Sixth Amendment confrontation right by the district court's order because the testimony he sought to elicit had a bearing on the credibility of the government's witnesses. However, Dufresne never made an argument about witness credibility to the district court. Dufresne's written offer of proof, along with his explanation of its relevance, made no mention of witness credibility. It is clear from the offer of proof and his explanation of its relevance that the focus of the evidence was his attempt to demonstrate to the jury that his indictment was retaliatory. It was on the basis of the written offer of proof that the district court decided to exclude the proffered evidence. Therefore, because Dufresne never made this argument to the district court, he has waived it.[7]

■ Moreover, even if the argument has not been waived, Dufresne's new, *post hoc*, Sixth Amendment argument is without merit. Dufresne claims that he intended to: "buttress the defense theory [that] the informant-witness lied by pointing to evidence that suggested a number of reasons for them to lie about appellant." Dufresne's Br. at 35–36. However, he proffered no evidence that witnesses "perceived that the government would be particularly receptive to lies about appellant," or that government investigators and counsel "simply induced them to include appellant in the conspiracy in retaliation for his lack of cooperation." *Id.* In fact, as the government notes, the whole point of Dufresne's proffer—that he was friends with the prosecutor's family—would seem to work in Dufresne's favor and not harm him.

Finally, it is clear from the record that Dufresne's constitutional right of confrontation was both protected and exercised at trial. Dufresne's counsel aggressively cross-examined all of the government's witnesses, argued against their credibility to the jury, and made clear to the jury his theory that the government's evidence was based largely on the testimony of co-conspirators and was insufficient to convict beyond a reasonable doubt. The fact that the jury rejected the defense does not mean that Dufresne's Sixth Amendment confrontation rights were violated.[8]

---

7. As a general rule, "absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal." *Patterson v. Cuyler*, 729 F.2d 925, 929 (3d Cir.1984), *overruled on other ground recognized in Carter v. Rafferty*, 826 F.2d 1299 (3d Cir.1987). Dufresne does not contend that there are any compelling circumstances that would warrant our considering the argument he now advances.

8. Dufresne also argues that the prosecutor's remark during rebuttal closing argument that there was no evidence of impropriety on the part of government counsel was improper is without merit. That portion of the government's argument was a proper response to repeated suggestions by Dufresne's counsel of a government conspiracy to frame his client. The prosecutor's response was restrained, focused on the arguments raised by defense counsel and well within the bounds of appro-

### (iii). References to AUSA Gordon.

■ Dufresne claims that the district court abused its discretion by precluding any reference to AUSA Gordon by name during the questioning of witnesses or eliciting his name from any witness. Dufresne's counsel gave no legitimate purpose for eliciting AUSA Gordon's name other than to intimate that AUSA Gordon prosecuted Dufresne because he refused to cooperate. However, as noted earlier, the proper way to raise a claim of vindictive prosecution is in a motion to dismiss, which Dufresne failed to do. Accordingly, this argument is without merit.[9]

### (iv). New Jersey Charges.

■ Dufresne's counsel elicited testimony on cross-examination of government witnesses that Dufresne had not been charged by New Jersey authorities in a related indictment. On the government's motion, the district court precluded counsel from making further reference to charging decisions by New Jersey. Dufresne argues that the fact that New Jersey authorities did not charge him in an indictment arising from the methamphetamine manufacturing and distribution scheme was relevant at his trial. Therefore, he contends that preclusion was improper. This argument approaches frivolity.

Criminal charges, and by implication, the lack of them, are not evidence. *See United States v. McDade*, 28 F.3d 283, 301 (3d Cir.1994) (an indictment is not evidence). In addition, the reasons for New Jersey's decision to charge or not charge defendants in a separate prosecution are not part of the record in this case, are unreviewable and are irrelevant to the factual issues at trial, including the credibility of witnesses. *See United States v. Oliver*, 787 F.2d 124, 126 (3d Cir.1986) ("separate sovereigns have the right to bring increased charges or simultaneous prosecution for similar or identical offenses"); *United States v. Berrigan*, 482 F.2d at 180 ("[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought").

### (v). Conclusion.

For all of the above reasons, we will affirm the district court's judgment of conviction and sentence as to Dufresne.[10]

---

priate response. *See United States v. Pelullo*, 964 F.2d 193, 217–18 (3d Cir.1992).

9. Although we find neither reversible error, or impropriety on the part of the government or AUSA Gordon, we do express concern about the appearance that could have resulted from Gordon's participation in this prosecution given his relatives' relationship to the defendant. We have already described those circumstances as "bizarre," and indeed they were. Of course, we are not privy to the personnel or administrative considerations that may have precluded another AUSA being assigned to this case, but we would hope that prosecutors would be cognizant of, and sensitive and responsive to, the awkward appearance that results from a relative of the assigned prosecutor testifying about loaning money to a defendant who is on trial.

Moreover, if there were reasons why another AUSA could not have replaced AUSA Gordon in this prosecution (at least during trial), it would have been far preferable to have so informed the trial court.

10. Dufresne also argues that the district court's ruling that a violation of its order through testimony that the government had prosecuted him improperly would open the door to relevant rebuttal evidence by the government explaining how Dufresne became a target was improper. However, because Dufresne did not violate the district court's order, the government's remedy was never imposed and that part of the order became moot.

### B. Lanzilotti's Appeal (No. 02–1929).

Lanzilotti makes a number of assignments of error, each of which is also considered separately.

### (I). Denial of Motion for New Trial.

■ Lanzilotti argues that the district court erred in denying his motion for a new trial. Federal Rule of Criminal Procedure 33 requires that, except in the case of newly discovered evidence (a claim not asserted here), a motion for a new trial "may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7–day period." Fed.R.Crim.P. 33. Lanzilotti's motion for a new trial was not made within seven days of the guilty verdict or at any other time for filing fixed by the district court. Rather, it was filed some seventeen months after the guilty verdict and just six days before sentencing.

The time limit for filing Rule 13 motions is jurisdictional. *United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.1987). "Thus, a district court is powerless to entertain such motions out of time unless the court grants an appropriate extension within seven days after its verdict." *Id.* (citations omitted). Because Lanzilotti's motion was filed out of time without a timely extension, the district court had no jurisdiction over the motion and properly denied it.

Moreover, the claim asserted in Lanzilotti's motion for a new trial was that his trial counsel rendered ineffective assistance resulting from a potential or actual conflict of interest allegedly between counsel's representation of Lanzilotti and his representation of a former client in a unrelated case. According to Lanzilotti, this other client was a potential target in the investigation that led to this indictment. However, we do not generally entertain ineffective assistance of counsel claims on direct appeal. *United States v. Rieger,* 942 F.2d 230, 235 (3d Cir.1991). Any allegation of ineffective assistance of counsel may appropriately be brought in a collateral proceeding under 28 U.S.C. § 2255, at which time a proper record may be developed. *See Government of Virgin Islands v. Forte,* 806 F.2d 73, 77 (3d Cir.1986).[11]

### (ii). Cautionary Instructions Concerning the Admission of Witnesses' Guilty Plea Agreements.

■ Lanzilotti argues that the district court committed plain error by failing to give a contemporaneous cautionary instruction concerning the admission of the government's cooperating witnesses' guilty pleas. This argument has also been waived. At the trial, the government specifically requested a contemporaneous instruction concerning the limited admissibility of the cooperating witnesses' guilty pleas. Counsel for Lanzilotti and Dufresne objected to a contemporaneous cautionary instruction on the ground that such an instruction would "draw undue attention" to the matter.[12] *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("[W]aiver is the intentional relinquishment of a known right.").

---

11. The rationale for reserving ineffective assistance claims for collateral review is that, as is the situation here, "such claims involve allegations and evidence that are either absent or not readily apparent on the record." *United States v. Gambino,* 788 F.2d 938, 950 (3d Cir.1986).

12. Moreover, we note that the district court did give a limiting instruction at the close of the case that was more than adequate to instruct the jury on the permissible evidentiary uses of the cooperating witnesses' guilty pleas.

### (iii). Burden of Proof Instruction.

Lanzilotti argues that the district court's final jury instruction concerning the government's burden of proof had the effect of lowering the required standard of proof.

■ The district court instructed the jury on the presumption of innocence and the government's burden of proof as follows:

the defendants are presumed by the law to be innocent and therefore the law does not require a defendant to prove his innocence or produce any evidence at all. The Government bears the burden of proving the defendants guilty beyond a reasonable doubt. If the Government has failed to do so you must find the defendants not guilty.

The law presumes a defendant to be innocent of all crimes charged. Thus a defendant, although accused, begins this trial as any other with a clean slate, with no evidence against him. The law permits nothing but legal evidence in support of any charges against an accused. So, the presumption of innocence also is sufficient to acquit a defendant unless you the jurors are satisfied that the Government again has proven the defendant's guilt beyond a reasonable doubt after careful and impartial consideration of all the evidence in the case.

It's not required that the Government proved guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is one based upon reason and commonsense, the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must therefore be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

Members of the jury, please remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden is always on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. So, if you, members of the jury are—after careful and impartial consideration of all of the evidence in the case, have a reasonable doubt that a defendant is guilty, you must find the defendant not guilty. If, members of the jury you view the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, then you should of course adopt the conclusion of innocence.

In Lanzilotti's view, the district court's use of the word "should" in the last sentence quoted above "gave the jury the unlawful option of convicting on a lower standard of proof." Lanzilotti's Br. at 21. He argues that the use of the word "should" lessened the government's burden of proof, because a "reasonable juror could have taken the instruction to mean that if such a circumstance existed [i.e., the evidence equally supported either guilt or innocence] they were not required to find the defendant not guilty." *Id.* at 24.

"[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Instead, the instructions "taken as a whole" must correctly convey the concept of reasonable doubt to the jury. *Id.* In examining the court's instructions, the "proper inquiry is not whether the instruction could have been applied in an uncon-

stitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." *Id.* at 6 (citation and internal quotations omitted).

Examining the instructions in their entirety, we find no reasonable probability that the jury based its verdict on anything less than proof beyond a reasonable doubt. Twice in the quoted instruction the district court told the jurors that if they have a reasonable doubt about the defendant's guilt, the "must" find him not guilty. It was only after twice making this statement that the court instructed that, if the evidence equally supports guilt or innocence, the jury "*should* ... adopt the conclusion of innocence." Viewed in context, the latter statement is merely an alternative way of saying that the jury must find the defendant not guilty if the government does not meet its burden of proof. "Should" was not permissive as the defendant argues, it was mandatory. In addition, later in the final charge, when instructing on the specific elements of each offense, the district court reminded the jury at least five additional times that the government "must" prove each of the essential elements "beyond a reasonable doubt." Accordingly, the district court correctly and adequately conveyed to the jury the government's constitutionally required burden of proof, and Lanzilotti's argument to the contrary is without merit.

Moreover, since no objections were made to the jury instructions at trial, we may reverse only for plain error. *United States v. Thayer,* 201 F.3d 214, 222–23 (3d Cir.1999). Lanzilotti, claims "error" but he does not even begin to explain how the alleged error was plain error.

### (iv). Enhancement for Supervisory Role.

▉ Lanzilotti claims that the district court erred at sentencing by adopting the Presentence Report's (PSR ¶ 62) assessment of a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) for Lanzilotti's supervisory role in the methamphetamine operation.

The enhancement for supervisory/managerial role requires only that, at some time during the commission of the offense, the defendant supervised or managed one or more other participants. *United States v. Fuentes,* 954 F.2d 151, 153–54 (3d Cir. 1992). In determining whether to increase a defendant's offense level, the sentencing court need only find the facts related to relevant conduct by a preponderance of the evidence. *United States v. Miele,* 989 F.2d 659, 663 (3d Cir.1993).

The trial record here clearly established that of the approximately twenty participants in the methamphetamine manufacturing and distribution operation, Lanzilotti was one of the three or four most culpable. Dennis Virelli testified that, from the time Lanzilotti joined the operation in the spring of 1996 through the final manufacturing session in December 1996, Lanzilotti was his full partner. Lanzilotti provided the required P2P, conducted the "cooks" with Virelli, and received at least half of the product in return. Further, based on the trial testimony of Virelli and others, it was established that Lanzilotti was in charge of the cooking process for the substantial periods of time when Virelli was not present and he supervised the work of the others at the labs, including Greisemer, DeCecco and David Ewing. Accordingly, the evidence established that Lanzilotti was both a manager and supervisor, and the district court properly enhanced Lanzilotti's guideline calculation by three levels under U.S.S.G. § 3B1.1(b).

### (v). Denial of Request for Downward Departure.

▉ ▪ Finally, Lanzilotti claims that the district court denied his motion for a

downward departure at sentencing because the court erroneously believed that it lacked the authority to depart downward.

Lanzilotti moved for a downward departure on two separate grounds. First, he claimed that, pursuant to *United States v. Sally,* 116 F.3d 76 (3d Cir.1997), he was entitled to a downward departure as a result of his post-offense rehabilitation. Second, he contended that the seriousness of his offense was overstated, thereby justifying a departure under *United States v. Smith,* 186 F.3d 290 (3d Cir.1999).

The government opposed the departure motions, arguing that there was nothing extraordinary about the factual circumstances of Lanzilotti's case that would justify the requested departures, but nonetheless acknowledged that the court had the authority to grant such departures in an appropriate case.

The district court denied the departure motions. It explained that the *Sally* departure was unwarranted because there was "nothing extraordinary about any of the things that [Lanzilotti] brought to the Court's attention." The court further explained that its review of the evidence and its belief that the Sentencing Guidelines were properly calculated, led it to conclude that the guidelines did not overstate the seriousness of the offense. Moreover, the court issued a written order with respect to each requested ground for departure acknowledging that it had the authority to depart downward for the reasons suggested by Lanzilotti, but declining to depart downward in the exercise of its discretion.

Because the district court acknowledged that it had the discretionary authority to depart downward, but nonetheless determined that the departure was not warranted, we have no jurisdiction to review a refusal to depart downward. *United*

*States v. Castano–Vasquez,* 266 F.3d 228, 231 (3d Cir.2001).

### (vi). Conclusion.

For all of the above reasons, we will affirm the district court's judgment of conviction and sentence as to Lanzilotti.