

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-2003

# USA v. Salcedo

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2592

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Salcedo" (2003). *2003 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2592
_____

UNITED STATES OF AMERICA

v.

NELSON SALCEDO, JR.,
a/k/a
Naz

Nelson Salcedo, Jr.,

Appellant

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. No. 01-cr-00373-1)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
October 16, 2003

Before:  SLOVITER, ROTH and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Filed: December 30, 2003)
_____
OPINION
_____


ROTH, <u>Circuit</u> <u>Judge</u>

Appellant Nelson Salcedo, Jr. appeals the judgment of sentence entered in the

United States District Court for the District of New Jersey. Salcedo pleaded guilty to one count of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The District Court sentenced him to 150 months imprisonment.

Salcedo raises three issues on appeal. First, he argues that the District Court erred in the factual determinations underlying its decision not to apply the safety-valve provision of the Sentencing Guidelines, U.S.S.G. § 5C1.2. Second, Salcedo claims that the District Court attributed an incorrect quantity of drugs to him at sentencing. Finally, Salcedo claims that the District Court erred in declining to decrease his offense level under U.S.S.G. § 3E1.1. For the reasons that follow, we will affirm.

As we write for the parties, who are aware of the facts underlying this appeal, we will set forth only those facts essential to our discussion. In reviewing the District Court's factual findings, we apply the deferential clearly erroneous standard. See United States v. Fuentes, 954 F.2d 151, 152-55 (3rd Cir. 1992). A district court does not commit clear error unless its factual findings are completely devoid of a credible evidentiary basis or bear no rational relationship to the supporting data. See United States v. Haut, 107 F.3d 213, 218 (3d Cir. 1997). By contrast, "[w]hether the facts found by the district court warrant application of a particular guideline provision is a legal question and is to be reviewed de novo." See United States v. Wilson, 106 F.3d 1140, 1142-43 (3d Cir. 1997) (quoting United States v. Partington, 21 F.3d 714, 717 (6th Cir. 1994)).

2

We first confront Salcedo's contention that the District Court erred in failing to apply the safety-valve provisions contained in U.S.S.G. § 5C1.2. The District Court denied Salcedo's request for a safety-valve reduction because it found that Salcedo had managed and supervised Rafael Prado and Michelle Thomas. This factual finding is supported by the record.[1] At the sentencing hearing, the prosecutor described the structure of the conspiracy with which Salcedo was involved and the roles of the various parties. Isaac Rivera (a.k.a. Isaac Burgos), Ronnie Lopez, and Salcedo were in the top tier of the conspiracy. Below them were Jose Lopez and Rafael Prado. Jose Lopez was the money man. Prado was the primary distributor of the crack cocaine. At the bottom level of the conspiracy were people such as Michelle Thomas, Narlyn Ramirez, and Carlos Merced. Everything that Michelle Thomas did was at the direction of Rivera, Ronnie Lopez, and Salcedo. All three of them sent Thomas on menial errands and used her residence to allow Rivera to cook powder cocaine into crack cocaine.[2] Salcedo's counsel did not disagree with the Government's characterizations of Salcedo's role in the

---

[1] We note that Salcedo submitted to this Court a copy of an affidavit produced by co-conspirator Ronnie Lopez. In the affidavit, Lopez avers that Salcedo was not a manager or supervisor of the conspiracy. The affidavit post-dates the sentencing hearing by seven months and was never presented to the District Court. It is thus not part of the record on appeal. See Fed. R. App. P. 10(a).

[2] Salcedo claims on appeal that, under United States v. Fuentes, 954 F.2d 151, 154 (3d Cir. 2002), he did not supervise Michelle Thomas because she primarily provided a building for storage. The claim lacks merit. The record established that Michelle Thomas not only provided a building for storage, but was sent on menial errands, such as buying the implements necessary to cook powder cocaine into crack cocaine.

3

conspiracy. He did, however, clarify that Rivera was at the top of the conspiracy and that Ronnie Lopez and Salcedo were not at the "top top." To the extent that Salcedo claims that he could not have been a manager or supervisor because he was not the overall leader of the conspiracy, his claim lacks merit. See United States v. King, 21 F.3d 1302, 1305 (3d Cir. 1994) (district court did not clearly err in finding that a defendant was a manager or supervisor even if co-conspirator was the mastermind of the plot).

In any event, the safety-valve provision does not apply in view of the sentence Salcedo received. See United States v. Holman, 168 F.3d 655, 660 (3d Cir. 1999). Section 5C1.2 is designed to allow the court to "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence," if the court finds that the defendant fulfills five criteria. In the present case, the statutory mandatory minimum was 120 months. 21 U.S.C. § 841(a)(1). The District Court determined that Salcedo's applicable guideline range was between 235 and 293 months. The District Court also recognized that, because the Government had filed a motion for a reduced sentence pursuant to 18 U.S.C. § 3553(e), it had the discretion to depart below the 120 month statutory minimum. Ultimately, the District Court sentenced Salcedo to a 150 month term of imprisonment. The record evidence shows that this decision was made in full consideration of the applicable guideline range and without regard to the statutory minimum sentence. Thus, even if Salcedo met the requirements of the safety valve provision, and he did not, the provisions of section 5C1.2 would be of no help to him.

4

See id. at 661.

Salcedo next challenges the drug quantity utilized by the District Court in calculating his sentencing guideline range. Salcedo is not in a position to make this argument. See United States v. Melendez, 55 F.3d 130, 136 (3d Cir.1995). In his plea agreement, Salcedo stipulated that the amount of controlled substances attributable to him for sentencing purposes was more than 1.5 kilograms of cocaine base, and at least 15 kilograms but less than 50 kilograms of cocaine. At the sentencing hearing, Salcedo did not contest the quantity of drugs attributed to him. We accordingly conclude that the District Court properly attributed 1.5 kilograms of cocaine base, and at least 15 kilograms but less than 50 kilograms of cocaine to Salcedo. See id. (rejecting a defendant's attempt to dispute a stipulation regarding the appropriate sentencing range); see also United States v. Parker, 874 F.2d 174 (3d Cir. 1989) (declining to allow a defendant to argue facts which contradicted those to which he agreed in his plea agreement).

Finally, Salcedo argues that the District Court erred in declining to decrease his offense level under U.S.S.G. § 3E1.1 because of his post-offense drug rehabilitation and acceptance of responsibility. This argument is factually incorrect. Upon review of the record, it is clear that the District Court awarded Salcedo a three level reduction in his Total Offense Level for acceptance of responsibility, which is the maximum reduction available under U.S.S.G. § 3E1.1. Salcedo stipulated to a Base Offense Level of 38 in his plea agreement. The District Court awarded him a three level reduction under U.S.S.G. §

5

3E1.1., but adjusted his offense level upward by three points under U.S.S.G. § 3B1.1 for his role as a manager or supervisor in a drug conspiracy that involved five or more participants. As the District Court properly concluded, the resulting Total Offense Level was 38.

For the reasons set forth above, we will affirm the judgment of sentence.

TO THE CLERK:

Please file the foregoing opinion.




      /s/ Jane R. Roth
          Circuit Judge