NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4066
_____

UNITED STATES OF AMERICA

v.

SCOTT TRAN,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 11-cr-00397)
District Judge:  Honorable Renee M. Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2014

Before:  SMITH, HARDIMAN and BARRY, *Circuit Judges*.

(Filed:  December 3, 2014)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Scott Tran appeals his judgment of sentence after pleading guilty to conspiracy to destroy a vessel. We will affirm.

I

Tran owned a large fishing boat, the *Alexander II*, on which he maintained a $400,000 casualty insurance policy. In 2009, frustrated with his return on investment, Tran attempted to persuade the *Alexander II*'s captain to sink the boat. Despite an offer of $10,000 and Tran's persistent prodding, the captain refused to do so. Undeterred, Tran (with the help of his "right hand man," Manh Nguyen) hired a new captain, Henry Anholt, to sink the boat. Anholt then recruited a crew to assist in the *Alexander II*'s destruction. For his efforts, each crew member was to receive $2,000 from Tran, while Anholt would receive more.

Anholt and his crew developed a plan to sink the boat, and, in August of 2009, they set sail on what they believed would be the *Alexander II*'s final voyage. After piloting the boat to a location over 80 miles off the coast of New Jersey, they filled much of it with water, sent a distress call to the Coast Guard, and abandoned ship. The Coast Guard retrieved the crew from a life raft and returned them to land early the next morning. Later that day, Anholt and his crew spoke with Nguyen about their efforts. Nguyen, on Tran's behalf, paid cash to the mariners to compensate them for their trouble. The payments were less than the previously agreed upon sums, so Anholt and one crew

2

member went with Nguyen to Tran's office to confront him about the disparity. Once there, Nguyen entered Tran's office and returned with more cash, which he gave to Anholt, who in turn paid the crew member. Nguyen subsequently made additional cash payments to Anholt on Tran's behalf.

Despite the crew's efforts, the *Alexander II* avoided a watery grave, remaining afloat until it was towed to land two days after the failed attempt to sink it. In the meantime, Tran hastened to file a claim to collect $400,000—the full policy amount— from his insurer the day his crew was rescued.[1] Within days of the rescue, the FBI began investigating the circumstances of the sinking. One of Anholt's crew members eventually admitted to the scheme, telling the FBI that Nguyen and Anholt asked him to help sink the boat. Anholt then admitted that he destroyed the *Alexander II* and that Tran and Nguyen paid him to do so.

Tran was indicted and arrested in June 2011. In November of that year, he pleaded guilty to conspiracy to destroy a vessel in violation of 18 U.S.C. § 2271. At his plea hearing, Tran confirmed that he "develop[ed] a plan to sink the *Alexander II* in order to get the insurance money for the boat"; that the "plan involve[d] hiring a captain and paying him and his crew to sink the boat"; that Nguyen was Tran's "right hand man"; and that he "g[a]ve Nguyen . . . money to give the captain and crew."

---

[1] The insurer denied the claim due to suspected fraud, and, six months later, Tran filed a lawsuit to compel payment of the insurance money.

In the plea agreement that accompanied Tran's guilty plea, the parties agreed to recommend a total United States Sentencing Guidelines (USSG) offense level of 19, which included a two-level enhancement because Tran was "an organizer, leader, manager, and supervisor" of the conspiracy. Disagreeing with the parties, the Probation Office recommended in the Presentence Investigation Report that Tran receive a four-level enhancement under USSG § 3B1.1(a) because he was an "organizer or leader" of the enterprise, rather than simply a "manager or supervisor." USSG § 3B1.1. The total offense level recommended by the Probation Office was 21, which resulted in a Guidelines range of 37–46 months' imprisonment, as opposed to 30–37 months under the plea agreement.

At sentencing, both Tran and the Government objected to the four-level role adjustment recommended by the Probation Office, requesting that the District Court abide by the plea agreement's two-level adjustment. The Court overruled the objection. In doing so, it noted several facts it found important in determining that Tran was an "organizer or leader" of the conspiracy: Tran "planned the scheme to sink the boat"; he "paid the hired hands, including the captain"; he "direct[ed] Nguyen"; he "had the claim to the larger share of the fruits of the crime"; and, in short, he "called the shots." The District Court then sentenced Tran to 46 months' imprisonment. Tran now appeals, arguing that the District Court should have applied only a two-level enhancement.

4

II

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and we review

Tran's sentence pursuant to 18 U.S.C. § 3742(a).[2] "We review the District Court's factual

findings relevant to the Guidelines for clear error and exercise plenary review over the

District Court's interpretation of the Guidelines." *United States v. West*, 643 F.3d 102,

105 (3d Cir. 2011) (citations omitted).

Tran argues that the District Court erred in applying a four-level enhancement

instead of the two-level enhancement to which he and the Government stipulated in the

plea agreement. Under USSG § 3B1.1(a), a four-level enhancement is appropriate "[i]f

the defendant was an organizer or leader of a criminal activity that involved five or more

participants . . . ."[3]

The gravamen of Tran's claim is that to be deemed an "organizer or leader" under

the Guidelines he must be a supervisor or manager. And because he did not actively

supervise the crew that sank his boat, he argues, he cannot be the leader of the conspiracy

---

[2] Tran's appeal was not timely under Federal Rule of Appellate Procedure 4(b), a fact that would have warranted dismissal had the Government raised it. *United States v. Muhammud*, 701 F.3d 109, 111 (3d Cir. 2012). However, although "[t]he time limit for filing a criminal appeal set forth in Rule 4(b) is rigid[, it is] not jurisdictional, and may be waived if not invoked by the government." *Id.* (citing *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 328–29 (3d Cir. 2010); *Bowles v. Russell*, 551 U.S. 205, 212 (2007)). The Government waived its right to object.

[3] Tran does not argue that the enterprise involved fewer than five participants.

as contemplated by § 3B1.1(a). Tran also argues that the relevant factors to consider when applying § 3B1.1—found in the application notes to that section of the Guidelines—counsel against application of the enhancement to him.

We need not decide whether Tran's interpretation of § 3B1.1(a) is correct, because even if it is true that one must be a supervisor or manager to qualify as a "leader or organizer," Tran's actions supported the four-level enhancement. Tran directly supervised at least one person: his "right hand man," Nguyen. By Tran's own admission, he hatched the plan to sink his boat and solicited two captains to carry out the plan. After Anholt agreed to do so, Tran hired him, and Nguyen acted as Tran's liaison with Anholt and his crew. On Tran's behalf, Nguyen discussed the failed sinking of the boat with the crew and paid the crew with money from Tran. When the crew was dissatisfied with Tran's underpayment, Nguyen led them to Tran's office. Once they arrived there, Nguyen met with and received more cash from Tran, then gave it to Anholt and his crew—again on Tran's behalf. Nguyen's actions and Tran's own statements provide ample evidence that Tran supervised at least one other person.[4] Thus, even under Tran's legal interpretation of § 3B1.1(a), the District Court's decision to apply a four-level enhancement to Tran was not clear error.

---

[4] Supervision of one person is sufficient to trigger § 3B1.1. *See United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992) ("To apply section 3B1.1, a district court must find that the defendant exercised control over *at least one* other person." (citing *United States v. Fuentes*, 954 F.2d 151, 153 (3d Cir. 1992)) (emphasis added)).

6

The application notes to § 3B1.1 also support the District Court's decision. Those notes provide factors to consider in applying the enhancement, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others . . . . This adjustment does not apply to a defendant who merely suggests committing the offense.

USSG § 3B1.1 cmt. n.4.

Tran takes a myopic view of nearly all of these factors. He argues that he "exercised no decision making authority"; that he "did not participate in the attempt to sink the ship"; that although he recruited Anholt, "it was Anholt who recruited the crew"; and that he "did not exercise any control or authority over . . . Anholt or his crew."

The record belies Tran's characterizations. Tran certainly exercised some decisionmaking authority—indeed, he set the scheme in motion by deciding to sink his own boat. Similarly, although he may not have been on the boat when the crew attempted to sink it, the nature of his participation was not minor, as he formulated the idea, solicited Anholt (and a previous captain before him) to carry it out, and provided funding for the enterprise. He recruited Anholt, the captain and critical accomplice, who then recruited the rest of the crew. And although Tran may have exercised little direct control over Anholt, he did supervise Nguyen, who worked with the crew on Tran's behalf.

The remaining factors also support the District Court's decision. Tran claimed a right to the lion's share of the proceeds from the crime—he attempted to collect on his

7

$400,000 insurance policy while paying Anholt and his crew a relative pittance. Moreover, although the scope of the illegal activity was a single transaction, that transaction had broad effect. It involved several innocent parties, including the Coast Guard (who rescued Anholt and the crew) and the company that towed the *Alexander II* back to shore after the failed sinking.

In sum, Tran was a far cry from "a defendant who merely suggest[ed] committing the offense." USSG § 3B1.1 cmt. n.4. He devised the idea to sink the boat and solicited two captains to carry out his plan, moving to the second when the first refused to do so. He paid the crew for their illegal acts. He stood to profit handsomely if his scheme was successful (and indeed sought to fraudulently collect on his insurance policy, even filing a lawsuit after his claim was denied). For these reasons, the District Court did not err when it applied the § 3B1.1(a) four-level enhancement to Tran and we will affirm the judgment of sentence.